## COMPAÑÍA GENERAL DE TABACOS DE FILIPINAS *v.* COLLECTOR OF INTERNAL REVENUE.

CERTIORARI TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 42. Argued October 18, 19, 1927.—Decided November 21, 1927.

1. A foreign corporation which has property and does business through agents in the Philippine Islands is subject to the taxing power of the Island government as a quasi sovereign, but the power is limited by the Organic Act. P. 92.
2. The liberty secured by the Organic Act embraces the right to make contracts and accumulate property and do business outside of the Philippine Islands and beyond its jurisdiction without prohibition, regulation, or governmental exaction. P. 92.

3. A merchandising corporation organized and having its headquarters in a foreign country, with property and local agents in the Philippines, can not be taxed by the Philippine government upon the premiums for the insurance of its goods shipped from the Islands, paid abroad upon a marine policy entered into abroad with a foreign insurance company having no license or agent in the Islands, and to be performed abroad. P. 92.

4. This is true whether the imposition be regarded as a penalty or as a tax, and regardless of its amount. The purpose in either case is to discourage insurance in outside companies by regulating the conduct of the insured not within the local jurisdiction. P. 95.

5. Where a foreign corporation doing business in the Philippine Islands insures goods in the Islands against fire, in a foreign insurance company which is licensed to do business there, the premiums paid are subject to taxation by the Philippine government, even though the policy was executed and the payments made in a foreign country where the assured had its headquarters. P. 98.

48 P. I. 35, reversed in part; affirmed in part.

CERTIORARI, 271 U. S. 655, to a judgment of the Supreme Court of the Philippine Islands which affirmed a judgment dismissing an action brought by the present petitioner to recover the money demanded of it by the respondent as taxes on insurance premiums, and which the petitioner paid under protest.

Messrs. W. F. Williamson, B. M. Aikins, and Barry Mohun for petitioner, submitted.

Mr. William Cattron Rigby, with whom Messrs. Delfin Jaranilla, Attorney General of the Philippine Islands, and A. R. Stallings were on the brief, for respondent.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The Compañía General de Tabacos de Filipinas, hereafter to be called the Tobacco Company, brought this suit in the Court of First Instance in Manila to recover from the Philippine Collector of Internal Revenue certain sums paid under protest as internal revenue taxes on insurance

premiums which the Tobacco Company during the year 1922, through its head office in Barcelona, Spain, paid to the Guardian Insurance Company of London, England, and to Le Comité des Assurances Maritimes de Paris of Paris, France. These two insurance companies we shall hereafter designate as the London Company and the Paris Company. The case was heard on an agreed statement of facts. The Tobacco Company is a corporation, duly organized under the laws of the Kingdom of Spain, and licensed to do business in the Philippine Islands, maintaining its chief office in the Islands in the city of Manila. During the year 1922 the Tobacco Company purchased and placed in its warehouses in the Philippines, merchandise, and from time to time notified its head office in Barcelona of its value. The Tobacco Company at its head office in Barcelona then insured the merchandise against fire under open and running policies of insurance carried by it with the London Company, and paid premiums of forty-eight hundred and thirty-five and 32/100 pesos. Subsequent to the purchase of the merchandise, the Tobacco Company from time to time shipped it to Europe, and by cable notified its head office in Barcelona of the value of the shipments. The head office thereupon insured with the Paris Company these shipments for and on behalf of the Tobacco Company against marine risks under open and running policies, premiums on which amounted during the year 1922 to 100,050.44 pesos, and the premiums thus paid were charged to the expense of the Tobacco Company at Manila. The London Company is licensed to do insurance business in the Philippine Islands and has an agent there. The Paris Company is not licensed to do business in the Philippines and has no agent there. Losses, if any, on these policies were to be paid to the Tobacco Company by the London Company in London and by the Paris Company in Paris. The insurance effected was secured without the use of any agent, company, corpora-

tion or other representative of the companies doing business in the Philippine Islands.  The collector in 1923 assessed and collected from the Tobacco Company a tax of one per cent. upon the premiums paid by it to the London Company of 4832.25 pesos, or 48 32/100 pesos, and on those paid by it to the Paris Company 100,050 44/100 pesos, or 1000 50/100 pesos.  These sums were paid under protest in writing.  The protests were overruled on the 27th day of July, 1923, and on the 16th of August the plaintiff filed this action for the recovery of the taxes.

The taxes were collected under § 192 of Act No. 2427, as amended by Act No. 2430, of the Statutes of the Philippines.  9 Public Laws 292.  That section provides that it shall be unlawful for any person or corporation in the Philippines to procure, receive or forward applications for insurance in, or to issue or to deliver or accept policies of, or for, any company or companies not having been legally authorized to transact business in the Philippine Islands, and that any person or company violating this section shall be guilty of a penal offense and upon conviction shall be punished by a fine of two hundred pesos, or imprisonment for two months, or both in the discretion of the court.  The section contains a proviso that insurance may be placed by authority of a certificate of the insurance commissioner to any regularly authorized fire or marine insurance agent of the Islands, subject to revocation at any time, permitting the person named therein to procure policies of insurance on risks located in the Philippine Islands in companies not authorized to transact business in the Philippine Islands.  Before the agent named in the certificate shall procure any insurance in such company, it must be shown by affidavit that the person desiring insurance after diligent effort has been unable to procure in any of the companies authorized to do business in the Philippine Islands the amount of insurance necessary.

The agent is to make a yearly report to the Collector of Internal Revenue of all premiums received by the company he represents under the previous authority, and he is to pay to the collector of internal revenue a tax equal to twice the tax imposed by § 79 of Act No. 2339, [*i. e.*, 1% thereof] which tax shall be paid at the same time and be subject to the same penalty for delinquency as the tax imposed by Act No. 2339.  9 Public Laws of Philippine Islands, February 27, 1914, p. 296.  It is provided further that the prohibitions of the section shall not prevent an owner of property from applying for and obtaining for himself policies in foreign companies in cases where he does not make use of an agent residing in the Philippine Islands.  In such cases it shall be his duty to report to the Insurance Commissioner each case where the insurance has been effected and shall pay a tax of one per centum on premiums paid in the manner required by law of insurance companies, and shall be subject to the same penalties for failure to do so.

The court of first instance sustained the validity of the tax as to each insurance company.  The Supreme Court of the Philippines affirmed the judgment.  Two judges of the latter court dissented on the ground that the tax violated the rule of uniformity, and was a denial of the equal protection of the law.

The Philippine Organic Act (39 Stat. 545, 546, c. 416, § 3) imposes upon the legislature of the Philippine Islands the same limitation by which the Fourteenth Amendment restrains the States of the Union, to wit, that no law shall be enacted in said Islands which shall deprive any person of life, liberty or property without due process of law, or deny to any person the equal protection of the laws.  The question of the validity of the tax on the premiums differs in respect to those paid the two insurance companies.

Coming then to the tax on the premiums paid to the Paris Company, the contract of insurance on which the premium was paid was made at Barcelona, in Spain, the headquarters of the Tobacco Company, between the Tobacco Company and the Paris Company, and any losses arising thereunder were to be paid in Paris. The Paris Company had no communication whatever with anyone in the Philippine Islands. The collection of this tax involves an exaction upon a company of Spain, lawfully doing business in the Philippine Islands, effected by reason of a contract made by that company with a company in Paris on merchandise shipped from the Philippine Islands for delivery in Barcelona. It is an imposition upon a contract not made in the Philippines and having no situs there, and to be measured by money paid as premium in Paris, with the place of payment of loss, if any, in Paris. We are very clear that the contract and the premiums paid under it are not within the jurisdiction of the government of the Philippine Islands. The taxpayer, however, is resident in the Philippine Islands and within the governmental jurisdiction of those Islands. Its property in the Islands and its agents doing business there are within the reach of the government of the Islands. The Company may be compelled to pay what the government in its quasi sovereignty chooses to exact as a matter of power, unless restrained by law. A legal restriction upon the taxing power of the Philippine government over citizens and residents of the Islands is found in the liberty secured by the Organic Act, which embraces the right to make contracts and accumulate property, and do business outside of the Philippine Islands and beyond its jurisdiction, without prohibition, regulation, or governmental exaction.

In *Allgeyer* v. *Louisiana*, 165 U. S. 578, a law of Louisiana provided that any person who should do any act in Louisiana to effect for himself or for another,

insurance on property then in that state, in any marine insurance company which had not complied in all respects with the laws of the state, should be subject to a fine of $1,000 for each offense. Allgeyer was sued for violating the statute, because he had mailed a letter in New Orleans to the Atlantic Mutual Insurance Company of New York, advising that company of a shipment of 100 bales of cotton to foreign ports, with bill of lading and an insurance certificate in accordance with the terms of an open marine policy of its issuing. Action was brought to recover for three such violations of the act the sum of $3,000. The answer was that the act was unconstitutional, in that it deprived the defendant of its liberty without due process of law; that the business concerning which the defendants were sought to be made liable and the contracts made in reference to such business were beyond the jurisdiction of the state, because the contract of insurance was made with an insurance company in the State of New York, where the premiums were to be paid and where the losses thereunder, if any, were to be paid. This Court held that citizens of a state had a right to contract outside the state for insurance on their property, a right of which the state legislature could not deprive them, because coming within the " liberty " protected by the Fourteenth Amendment, and that the letter sent to the company was a proper act, which the state legislature had no right to prevent, this even though the property which was the subject of the insurance had been within the state.

On the authority of the *Allgeyer* case, this Court decided *St. Louis Cotton Compress Company* v. *State of Arkansas,* 260 U. S. 346. That was a suit by the State of Arkansas against the Compress Company, a corporation of Missouri, authorized to do business in Arkansas. It was brought to recover 5 per cent. on the gross premiums paid by the Compress Company for insurance upon its property

in Arkansas to companies not authorized to do business in
that state. A statute of Arkansas in terms imposed a
liability for this 5 per cent. as a tax. The answer alleged,
and the proof showed, that the policies were contracted
for, delivered and paid in St. Louis, Missouri, where the
rates were less than those charged by companies author-
ized to do business in Arkansas. The plaintiff demurred.
The Supreme Court of the State justified the imposition
as an occupation tax. This Court said:

" The short question is whether this so-called tax is
saved because of the name given to it by statute when it
has been decided in *Allgeyer* v. *Louisiana*, 165 U. S. 578,
that the imposition of a round sum, called a fine, for doing
the same thing, called an offense, is invalid under the
Fourteenth Amendment. It is argued that there is a dis-
tinction because the Louisiana statute prohibits (by impli-
cation) what this statute permits. But that distinction,
apart from some relatively insignificant collateral conse-
quences, is merely in the amount of the detriment imposed
upon doing the act. . . . Here it is five per cent. upon
the premiums—which is three per cent. more than is
charged for insuring in authorized companies. Each is
a prohibition to the extent of the payment required. The
Arkansas tax manifests no less plainly than the Louisiana
fine a purpose to discourage insuring in companies that
do not pay tribute to the State. The case is stronger than
that of *Allgeyer* in that here no act was done within the
State, whereas there a letter constituting a step in the
contract was posted within the jurisdiction. It is true
that the State may regulate the activities of foreign cor-
porations within the State but it cannot regulate or inter-
fere with what they do outside."

The authority of these cases is controlling in disposing
of the one before us. The effect of them is that, as a state
is forbidden to deprive a person of his liberty without due
process of law, it may not compel any one within its juris-

diction to pay tribute to it for contracts or money paid to secure the benefit of contracts made and to be performed outside of the state.

But it is said that these two cases were really cases of penalties, although in the *Compress Company* case the law called the imposition an occupation tax. We are unable to see any sound distinction between the imposition of a so-called tax and the imposition of a fine in such a case. A so-called tax is just as much an interference with the liberty of contract as is a penalty by fine, where the subject matter giving rise to the imposition is beyond the jurisdiction of the state. Reference was made in the *Compress* case to the fact that that which was imposed was larger than would have been the tax in the state if all parties had been in the state and the contract had been made there, but the decision itself clearly does not depend for its basis upon discrimination as between a tax and a prohibition or the amount of it. This Court said, in comparing the *Allgeyer* case and the *Compress* case:

"In Louisiana the detriment was $1,000. Here it is five per cent. upon the premiums—which is three per cent. more than is charged for insuring in authorized companies. Each is a prohibition to the extent of the payment required. The Arkansas tax manifests no less plainly than the Louisiana fine a purpose to discourage insuring in companies that do not pay tribute to the State."

And that is just what this tax is for. Even though it is only equal to the tax upon normal premiums paid in the Philippine Islands, it is imposed for the purpose of discouraging insurance in companies that do not pay tribute to the state because out of its taxing or penalizing jurisdiction. As the language above quoted from the opinion in the *Compress* case shows, the action of Arkansas was invalid, because of its attempt to regulate " the conduct of the Compress Company in respect of a matter not

within its local jurisdiction. Taxation is regulation just as prohibition is.

It is sought to take this case out of the *Allgeyer* and the *Compress* cases by reference to *Equitable Life Assurance Society* v. *Pennsylvania*, 238 U. S. 143. The Equitable Life Assurance Society of New York did business in Pennsylvania. The Legislature levied an annual tax of 2 per cent. upon the gross premiums of every character received from business done by it within the state during the preceding year. The company paid large taxes, but appealed to the state courts to relieve it from charges for such of the premiums for five years as had been paid outside the state by residents of Pennsylvania. It was contended by the company that such taxation was of property beyond the jurisdiction of the state, relying on the *Allgeyer* case. This Court held that the tax was a tax for the privilege of doing business in Pennsylvania, and that the fact that the state could not prevent the contracts did not interfere with its right to consider the benefit annually extended to the Assurance Society by Pennsylvania in measuring the value of the privileges so extended; that the tax was a tax upon a privilege actually used, and the only question concerned the mode of measuring the tax. This Court said as to that:

"A certain latitude must be allowed. It is obvious that many incidents of the contract are likely to be attended to in Pennsylvania, such as payment of dividends when received in cash, sending an adjuster into the State in case of dispute, or making proof of death. See *Connecticut Mut. Life Ins. Co.* v. *Spratley*, 172 U. S. 602, 611; *Pennsylvania Lumbermen's Mut. Fire Ins. Co.* v. *Meyer*, 179 U. S. 407, 415. It is not unnatural to take the policy holders residing in the State as a measure without going into nicer if not impracticable details. Taxation has to be determined by general principles, and it seems to us

impossible to say that the rule adopted in Pennsylvania goes beyond what the Constitution allows."

The case is not in conflict either with the *Allgeyer* case or with the *Compress* case, decided as late as December, 1922. It turns entirely on the fact that the taxpayer had subjected itself to the jurisdiction of Pennsylvania in doing business there, and it was for the state to say what the condition of its doing that business in the matter of the payment of taxes should be. This Court said that the Equitable Society was doing business in Pennsylvania when it was annually paying dividends in Pennsylvania, or sending an adjuster into the state in case of dispute, or making proof of death, and therefore that it was not improper to measure the tax for doing business in the state by the number of individuals whose lives had been insured and with respect to whom, and the execution of whose contracts, the company was necessarily doing business in the state, even if the premiums paid by some of them had not been paid in the state.

It is true that, in considering the question of the measure of the tax, this Court referred to the argument of the Supreme Court of Pennsylvania that the tax might be properly measured by New York contracts because Pennsylvania protected the individuals insured therein during their lives in Pennsylvania. Our Court accepted this as one of several reasons for including such individuals in the measure of the tax, because of the incidental business done by the Insurance Company in Pennsylvania which the living of such individuals in that state, after the making of the contract, brought into its performance and consummation. But such reference cannot be made a basis for an argument that such protection as the Government of the Philippine Islands gave to the merchandise while being shipped at Manila furnished any jurisdiction for a tax by that Government on the premiums paid in Barcelona upon the insurance contract.

If that were to be admitted, then neither the *Allgeyer* nor the *Compress* case could be sustained, for the property in each of those cases was protected by the government seeking to impose the forbidden exactions upon the owner, who obtained the insurance out of the state, on that property within it. The tax here is not on the property insured. It is a tax on the contract, or its proceeds, which were not in the Philippines, or expected to be there. The *Equitable Society* case does not control or affect the question we are considering. Unless we are to reverse the *Compress* and *Allgeyer* cases, the judgment of the Supreme Court of the Philippines in respect of the tax on the premiums paid to the Paris Company must be held to be erroneous.

Second. We come now to the question of the tax upon the premiums paid to the London Company, which was licensed and presumably was doing business in the Philippine Islands. Does the fact that, while the Tobacco Company and the London Company were within the jurisdiction of the Philippines, they made a contract outside of the Philippines for the insurance of merchandise in the Philippines, prevent the imposition upon the assured of a tax of one per cent. upon the money paid by it as a premium to the London Company? We may properly assume that this tax, placed upon the assured, must ultimately be paid by the insurer, and treating its real incidence as such, the question arises whether making and carrying out the policy does not involve an exercise or use of the right of the London Company to do business in the Philippine Islands under its license, because the policy covers fire risks on property within the Philippine Islands which may require adjustment, and the activities of agents in the Philippine Islands with respect to settlement of losses arising thereunder. This we think must be answered affirmatively under *Equitable Life Society* v. *Pennsylvania,* 238 U. S. 143. The case is a close one, but in deference to the conclusion we

reached in the latter case, we affirm the judgment of the court below in respect to the tax upon the premium paid to the London Company.

> > *The judgment of the Supreme Court of the Islands is reversed in part and affirmed in part.*

---

### MR. JUSTICE HOLMES, dissenting.

This is a suit to recover the amount of a tax alleged to have been illegally imposed. The plaintiff is a Spanish corporation licensed to do business in the Philippine Islands and having an office in Manila. In 1922 from time to time it bought goods and put them into its Philippine warehouses. It notified its head office in Barcelona, Spain, of the value of the goods and that office thereupon insured them under open policies issued by a company of London. From time to time also the Philippine branch shipped the goods abroad for sale and secured insurance upon the shipments in the same manner, the premiums being charged to it in both cases. By § 192 of the Philippine Insurance Act, No. 2427, as amended by Act No. 2430, where owners of property obtain insurance directly with foreign companies, the owners are required to report each case to the Collector of Internal Revenue and to 'pay the tax of one per centum on premium paid, in the manner required by law of insurance companies.' The defendant Collector collected this tax on the above mentioned premiums from the plaintiff against its protest. The plaintiff bases its suit upon the contentions that the statute is contrary to the Act of Congress of August 29, 1916, c. 416, § 3, (the Jones Act) ; 39 Stat. 545, 546, 547, as depriving it of its property without due process of law, and also as departing from the requirement in the same section that the rules of taxation shall be uniform. The Supreme Court of the Philippines upheld the tax. A writ of certiorari was granted by this Court. 271 U. S. 655.

The plaintiff's reliance is upon *Allgeyer v. Louisiana,* 165 U. S. 578, in which it was held that a fine could not be imposed by the State for sending a notice similar to the present to an insurance company out of the State. But it seems to me that the tax was justified and that this case is distinguished from that of *Allgeyer* and from *St. Louis Cotton Compress Co.* v. *Arkansas,* 260 U. S. 346, by the difference between a penalty and a tax. It is true, as indicated in the last cited case, that every exaction of money for an act is a discouragement to the extent of the payment required, but that which in its immediacy is a discouragement may be part of an encouragement when seen in its organic connection with the whole. Taxes are what we pay for civilized society, including the chance to insure. A penalty on the other hand is intended altogether to prevent the thing punished. It readily may be seen that a State may tax things that under the Constitution as interpreted it can not prevent. The constitutional right asserted in *Allgeyer* v. *Louisiana* to earn one's livelihood by any lawful calling certainly is consistent, as we all know, with the calling being taxed.

Sometimes there may be a difficulty in deciding whether an imposition is a tax or a penalty, but generally the intent to prohibit when it exists is plainly expressed. Sometimes even when it is called a tax the requirement is shown to be a penalty by its excess in amount over the tax in similar cases, as in *St. Louis Cotton Compress Co.* v. *Arkansas.* But in the present instance there is no room for doubt. The charge not only is called a tax but is the same in amount as that imposed where the right to impose it is not denied.

The Government has the insured within its jurisdiction. I can see no ground for denying its right to use its power to tax unless it can be shown that it has conferred no benefit of a kind that would justify the tax, as is held with regard to property outside of a State belonging to one within it. *Frick* v. *Pennsylvania,* 268 U. S. 473, 489.

But here an act was done in the Islands that was intended by the plaintiff to be and was an essential step towards the insurance, and, if that is not enough, the Government of the Islands was protecting the property at the very moment in respect of which it levied the tax. Precisely this question was met and disposed of in *Equitable Life Assurance Co.* v. *Pennsylvania,* 238 U. S. 143, 147.

The result of upholding the Government's action is just. When it taxes domestic insurance it reasonably may endeavor not to let the foreign insurance escape. If it does not discriminate against the latter, it naturally does not want to discriminate against its own.

The suggestion that the rule of taxation is not uniform may be disposed of in a few words. The uniformity required is uniformity in substance, not in form. The insurance is taxed uniformly, and although in the case of domestic insurance the tax is laid upon the Company whereas here it is laid upon the insured, it must be presumed that in the former case the Company passes the tax on to the insured as an element in the premium charged.

For these reasons Mr. Justice BRANDEIS and I are of the opinion that the judgment of the Supreme Court of the Islands should be affirmed.