**STATE BOARD OF INSURANCE et al.,**
Appellants.

v.

**TODD SHIPYARDS CORPORATION,**
Appellee.

No. 10802.

Court of Civil Appeals of Texas.

Austin.

Nov. 16, 1960.

Rehearing Denied Nov. 23, 1960.

Will Wilson, Atty. Gen., Fred B. Werkenthin, Bob E. Shannon, Asst. Attys. Gen., for appellant.

Liddell, Austin, Dawson & Huggins, Charles R. Vickery, Jr., Willis Witt, Houston, for appellee.

HUGHES, Justice.

Todd Shipyards Corporation, appellee, sued the State Board of Insurance, its members and other state officials to recover taxes paid under protest in accordance with the provisions of Art. 7057b, Vernon's Ann. Civ.St.

The case was tried upon stipulated facts. Judgment for appellee for the taxes paid under protest was rendered.

The sole question presented is the constitutionality of the statute under which the taxes paid by appellee were exacted. This statute is Art. 21.38, Sec. 2(e) of the Texas Insurance Code, V.A.C.S., which we quote:

> "If any person, firm, association or corporation shall purchase from an insurer not licensed in the State of Texas a policy of insurance covering risks

within this State in a manner other than through an insurance agent licensed as such under the laws of the State of Texas, such person, firm, association or corporation shall pay to the Board a tax of five per cent (5%) of the amount of the gross premiums paid by such insured for such insurance. Such tax shall be paid not later than thirty (30) days from the date on which such premium is paid to the unlicensed insurer."

The following material facts are taken from the stipulation of the parties.

Todd Shipyards Corporation is a New York Corporation duly licensed to do business in Texas. Since 1934 Todd has owned real and personal property located in Texas of a value in excess of $900,000.

Todd has purchased insurance agreements covering Texas risks from Lloyds of London and Institute of London Underwriters of the following nature: 1. Industrial work property damage (2) Builders' risk (3) Drydocks (4) Pier and bulkhead collision (5) Product liability insurance, to the extent of the excess portion of that insurance.

Only transactions with the insurers above named are involved in this case. Each of such insurers is domiciled in London, England.

Each of the insurance agreements made the basis of the taxes involved in this suit was contracted for, delivered and paid for in New York City, New York, the domicile of Todd Shipyards Corporation.

Neither Lloyds of London nor the Institute of London Underwriters has a permit from the Texas State Board of Insurance to write insurance in Texas; neither insurer submits any statement of its condition to such Board, and the affairs of neither are subject to examination or subject to any control or supervision by such Board. Neither of such insurers has an office or agent in Texas.

Neither Lloyds of London nor the Institute of London Underwriters conducts any investigation of Texas claims in Texas, but the adjustment of losses, if, as and when occurring, are handled between Todd's agent in the New York office and the agent of Lloyds of London and the Institute of London Underwriters in New York City.

Neither Lloyds of London nor the Institute of London Underwriters has ever solicited Todd's insurance business or policies within the State of Texas.

The Texas plants or offices of Todd Shipyards Corporation do not correspond directly or indirectly nor conduct any negotiations or transactions directly or indirectly with Lloyds of London or the Institute of London Underwriters but all negotiations or transactions are handled by Todd's agent, Mr. Ed Costello, in New York City with the New York City Agents of the insurer or directly with the London office.

All decisions relative to the purchase of insurance and renewal of insurance, the extent and amount of coverage, the selection of insurers and confirmation of insurance contracts are made by Mr. Ed Costello in New York City acting for Todd Shipyards Corporation, and not in Texas.

Under these policies all losses are payable in New York City and all losses have in fact been paid in New York City. All premiums are payable in New York City and have been paid in New York City.

Todd Shipyards has its principal office, principal place of business and domicile in New York City, New York. Todd maintains and operates shipyards in New Jersey, Louisiana, Texas, California, Washington and South America.

Todd's Texas plants are located at Pelican Island in Galveston County, Texas, and on the Houston Ship Channel in Harris County, Texas. Todd duly obtained a certificate of authority to do business in Texas issued by the Secretary of State of Texas in 1934 and has maintained such certificate

in good standing and has duly filed all reports and paid all taxes, fees and charges levied against Todd for the privilege of doing business as a foreign corporation in Texas.

Since 1934 Todd has made large investments in real and personal properties essential to the conduct of its shipyard business which it has held and operated continuously since 1934.

Approximately 27% of Todd's volume of business was done in Texas in each of the years 1956, 1957, 1958 and 1959. The number of employees at the Texas plants varies with the amount of work, but in November, 1959, the number of employees was about 1500.

The principal type of activity performed at the Texas plants is similar to that in other plants located in other states, and the Galveston and Houston, Texas shipyards activity consists mainly of ship repair and conversion of ships from one type to another, construction of vessels, various types of metal fabrication and construction, as well as the manufacture of industrial equipment and oil burners.

Todd purchased the insurance agreements of concern here through brokers located in New York and Canada, none of whom was a licensed insurance agent under the laws of Texas.

Such policies of insurance were signed and issued in England, and they state that while actual delivery is in England that the places of delivery, at the option of the insured, may be considered to be New York City. All of such policies were accepted by Todd in New York City. Most of them were for a period of one year. All renewals were negotiated outside of Texas. No premium was paid by or from Todd's plants or offices in Texas.

Todd's New York office sends copies of all policies affecting Texas plants and risks to its Texas offices.

In the case of builders' risk insurance, Todd's Texas office notifies Mr. Ed Costello

in New York, Todd's New York insurance man, that Todd has entered into a construction or repair contract. Mr. Costello then applies to one of the New York insurance brokers for builders' risk insurance coverage on that particular vessel or contract; this application letter is signed by Mr. Costello in New York, an officer of the New York office, but the coverage is requested in the name of the Corporation's Texas division and identifies Texas as the place where the work is to be performed.

When a loss occurs at the Texas plants of Todd the Texas plant informs Mr. Costello at Todd's New York office by telephone or memorandum. Mr. Costello in New York then notifies in New York the New York brokerage house in New York that negotiated the insurance; the New York broker in turn appoints the London Salvage Association to prepare an estimate or "survey" of the loss. In some instances Todd's New York office notifies the London Salvage Association that a survey is requested. The Texas plant of Todd also appraises the amount of its loss. After appraisal, the London Salvage Association forwards its estimate or survey to Todd's New York office, and Todd then submits the survey to the particular insurance broker to be used in adjusting the amount of the loss. The local plant of Todd assists the London Salvage Association in arriving at a fair figure for the loss. The London Salvage Association issues a bill to Todd Shipyards for the London Salvage Association's services, and such bill is paid in New York City by Todd Shipyards Corporation.

The adjusting of the loss is carried on by Lloyds through the insurance broker in New York and Mr. Costello in New York. The insurance broker submits its adjustment figure and recommendation to Lloyds in London and the Institute of London Underwriters for final approval. After the figure and adjustment of loss is approved, the New York office is notified by the insurance broker or the underwriter and the New York office then notifies the Texas plants that the claim will or will not be paid.

The tax levied by the State on premiums paid by Todd Shipyards Corporation on policies purchased from Lloyds of London and the Institute of London Underwriters, "unadmitted insurers," is at the rate of five per cent of the gross premiums. The tax on similar premiums paid to admitted insurers and persons transacting an insurance business in the State of Texas is at rates of a maximum of 3.85% to a minimum of 1.1%, Article 21.38, Texas Insurance Code and Article 7064, V.A.C.S.

The administrative agencies of the State through which the monies collected under Sec. 2(e), supra, passed, treated such funds as funds derived from occupation taxes are treated.

It is the contention of appellee that Sec. 2(e), Art. 21.38, supra, is violative of the "due process" clauses of the Constitutions of the United States and Texas (Sec. I, 14th Amendment, Art. 1, Sec. 19, respectively, Vernon's Ann.St.) and of the "equality and uniformity" clause of the Texas Constitution (Secs. 1 and 2, Art. 8), and the equal protection clause of the United States Constitution (Sec. 1, 14th Amendment).

We believe that invalidity and unconstitutionality of this statute is established by the opinion of the United States Supreme Court in St. Louis Cotton Compress Company v. State of Arkansas, 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297, from which we quote:

> "This is a suit by the State of Arkansas against a corporation of Missouri authorized to do business in Arkansas. It is brought to recover five per cent on the gross premiums paid by the defendant, the plaintiff in error, for insurance upon its property in Arkansas, to companies not authorized to do business in the State. A statute of the state purports to impose a liability for this amount as a tax. Crawford & Moses Digest (1921) § 9967. The answer alleged that the policies were contracted for, delivered and paid for in St. Louis, Missouri, the domicile of the corporation, because the rates were less than those charged by companies authorized to do business in Arkansas. It also alleged that long before the taxing act was passed the defendant had made large investments in Arkansas in real and personal property essential to the conduct of its business, which it had held and operated ever since. The plaintiff demurred. The lower Court overruled the demurrer, but the Supreme Court sustained it, holding that the statute denied to the defendant no rights guaranteed to it by the Fourteenth Amendment. Judgment was entered for the plaintiff and the case was brought by writ of error to this Court.

> "The Supreme Court justified the imposition as an occupation tax—that is, as we understand it, a tax upon the occupation of the defendant. But this Court although bound by the construction that the Supreme Court may put upon the statute, is not bound by the characterization of it, so far as that characterization may bear upon the question of its constitutional effect. St. Louis Southwestern R. Co. v. State of Arkansas, 235 U.S. 350, 362, 35 S.Ct. 99, 59 L.Ed. 265, (271). The short question is whether this so-called tax is saved because of the name given to it by the statute, when it has been decided in Allgeyer v. State of Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832, that the imposition of a round sum, called a fine, for doing the same thing, called an offence, is invalid under the Fourteenth Amendment. It is argued that there is a distinction because the Louisiana statute prohibits (by implication) what this statute permits. But that distinction, apart from some relatively insignificant collateral consequences, is merely in the amount of the detriment imposed upon doing the act. The name given by the State to the imposition is not conclusive. Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, * * * (21

A.L.R. 1432); Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061. * * * In Louisiana the detriment was $1000. Here it is 5 per cent upon the premiums,—which is 3 per cent more than is charged for insuring in authorized companies. Each is a prohibition to the extent of the payment required. The Arkansas tax manifests no less plainly than the Louisiana fine a purpose to discourage insuring in companies that do not pay tribute to the State. This case is stronger than that of Allgeyer in that here no act was done within the State, whereas there a letter constituting a step in the contract was posted within the jurisdiction. It is true that the State may regulate the activities of foreign corporations within the State, but it cannot regulate or interfere with what they do outside."

Judgment sustaining the statute was reversed.

We quote from appellants' brief their answer to this case:

"The Allgeyer [1] and the St. Louis Compress cases were decided respectively in 1896 and 1922. Since then, the authority of those cases have been questioned in subsequent opinions by the United States Supreme Court. The emphasis of the Court now has moved away from the conceptualistic theories of place of contracting and performance of the contract onto the consideration of the citizen insured or the protection of the state from the incident of loss. The Osborn and Hoopeston cases,[2] supra, make it clear that the approach taken by the court to these regulatory matters has changed. As said in the Hoopeston case:

" 'In determining the power of the State to apply its own regulatory laws to insurance business activities, the question in the earlier cases became involved by conceptualistic discussion of theories of the place of contracting or performance. More recently it has been recognized that a state may have substantial interests in the business of insurance of its people or property regardless of those isolated factors. This interest may be measured by highly realistic consideration such as the protection of a citizen insured or the protection of a state from the incidents of loss * * *'

"The Court continued:

" 'The actual physical signing of the contracts may be only one element of a broad range of business activities. Business may be done in a state although those doing the business are scrupulously careful to see that not a single contract is ever signed within that state's boundaries. Important as the execution of a written contract may be, it is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.

" ' * * * as the analysis of those opinions clearly indicates, the Allgeyer line of decisions cannot be permitted to control cases such as this, where the public policy of the state is clear, the insured interest is located in this state and there are many points of contact between the insurer and the property in the state.' "

Neither the Cotton Compress case nor the Allgeyer case has been overruled. For that matter, the Court expressly declined to overrule such cases in Compania Gen. De Tabacos, etc. v. Collector of Int. Rev., 275 U.S. 87, 48 S.Ct. 100, 72 L.Ed. 177.

We are confident that the Supreme Court of the United States, enlightened by its own

---

1. Cited in St. Louis Compress Co. v. State of Arkansas.

2. Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074, Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777.

criticism of the Allgeyer and Cotton Compress cases, will, upon proper application, re-examine those cases and pronounce a decision sustaining the Legislature of Texas in enacting this statute for the protection of its citizens in a field subject to rigid regulation by the State. Until such time, however, it is our duty to follow those cases. This we do, and affirm the judgment of the Trial Court.

Affirmed.