**Weisbord Estate**

*Sheldon C. Jelin,* for accountants.

*Nancy Rothkopf,* for Commonwealth of Pennsylvania, Department of Revenue.

SHOYER, *J.,* October 31, 1975—Joseph Weisbord, also known as Joe Weisbord and as J. Weisbord, died August 2, 1973, survived by his spouse, Rose Weisbord, and leaving a will dated March 4, 1970. By his will, he gave his wife, Rose, his tangible personal property, together with all the policies of insurance relating thereto. He directed that his residuary estate be divided into a marital deduction portion (computed as provided in clause seventh of his will) and a non-marital deduction portion. He gave the former portion to his trustees, to wit, Rose Weisbord, his wife, Elaine Slotkin, his daughter, and Paul Weisbord, his son, to hold in a separate trust and to pay the net income thereon to his wife during her lifetime. The trustees in their sole discretion have the power to invade the principal of the trust in order to provide a guaranteed minimum to his wife. The will also provided that she had the power to appoint the remainder of the trust fund by her will. He gave the non-marital deduction portion of his residuary estate to his trustees, to distribute in their discretion, or to accumulate the income, during the lifetime of the widow for her benefit, and upon her death to pay a legacy of $5,000 to each of his grandchildren then living when they attained

the age of 24 years, together with income accumulated until then, plus the balance of the trust principal and any principal which may fall in if the widow does not exercise her power of appointment by her will. . . .

The surviving spouse claimed the $1,500 family exemption and credit is taken in this amount. This was noted on page 6 of the account as a distribution, but should be taken as a credit to the principal account, and the court hereby amends this. Counsel also notes on the same page of the account distributions in the amount of $9,813.63, for reimbursement for gravestone and taxes and various expenses. These should also be properly shown as credits to the principal account, and the court hereby amends this.

Payment of the Pennsylvania Transfer Inheritance Tax on July 3, 1974, in the sum of $4,000, on September 24, 1974, in the sum of $1,774.76, and on September 24, 1974, in the sum of $30.04, was duly vouched.

At the audit of the account, a claim by the Commonwealth of Pennsylvania, Inheritance Tax Department, for the sum of $83.21 was not admitted. This problem arose because counsel for the accountants could not secure inheritance tax waivers to enable him to transfer and sell stock registered in the name of decedent. Section 831 of the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, 72 P.S. §2485-831, provides that no corporation shall transfer a decedent's stocks or bonds unless the inheritance tax upon them has been paid or unless the "written consent" of the Secretary of Revenue is first obtained or, in other cases, until the proper required affidavits have been submitted. The consent when issued is referred to as a

"waiver" and it is normally issued by the register of wills as an agent for the Secretary of Revenue.

It had been the general practice of the Department of Revenue in the past to require that an inheritance tax return be filed, the securities in question be appraised and the tax paid on the value of the securities before the consent of the secretary was granted.

It was acknowledged that this procedure was time-consuming and, in some instances, resulted in unwarranted delay. Therefore, the Department of Revenue issued a directive, Inheritance Tax: Waivers to Transfer Securities (Directive #15), 17 Fiduc. Rep. 431 (1967), and amended in 23 Fiduc. Rep. 308 (1973), whereby it is no longer necessary for the personal representative to file an inheritance tax return and have the securities appraised by the Commonwealth before the waiver is issued.

However, any Pennsylvania Inheritance Tax due on the transfer must be paid prior to the issuance of the waiver, except in two circumstances. One of these two exceptions is:

"I. Procedures, A. Registers of Wills . . .

"(2)(b) When the attorney of record for a transferee or for an estate of a resident decedent is admitted to practice and in good standing in Pennsylvania, and he or she personally guarantees the payment of any inheritance taxes which may become due on the transfer of the securities for which the waiver is requested . . ." 23 Fiduc. Rep. 308, 310 (1973).

Counsel for the accountants raises the question whether it is ethical and proper for an attorney to personally guarantee the obligation of his client.

The American Bar Association's Code of Professional Responsibility provides in Disciplinary Rule D.R. 5-103(B), as follows:

"While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses."

It does not clearly appear that the payment or guarantee of such matters now at issue before this court comes within the precise prohibition of the above disciplinary rule. It does seem, however, that an attorney who guarantees the payment of inheritance taxes for his client, as per Directive #15, would be in conflict with the spirit of the rule.

Before the consolidation of the courts of common pleas, the Philadelphia County Orphans' Court had its own set of local rules which were integrated with the Pennsylvania Supreme Court Orphans' Court Rules. Rule *1.3(h) stated:

"(h) Attorney as Surety. A member of the bar of this court shall not act as surety in any proceeding in this court, except by special leave of court."

When the courts were consolidated into the present common pleas court system, the judges of the Philadelphia County Orphans' Court Division resolved that all orphans' court division rules pertaining to admission, conduct, practice and discipline of counsel should be deleted and in their place these matters should be governed by the rules

adopted by the Board of Judges of the Court of Common Pleas. However, the orphans' court judges have always believed that the intent and purpose of this rule should remain.

Likewise, Rule *918 of the Philadelphia County Civil Rules of Procedure, as integrated with the Pennsylvania Rules of Civil Procedure [now Rule 46(A) of the Philadelphia Court Rules] states that "[N]o attorney . . . shall become bail [at the commencement of an action] except by written leave of the Court." Although this rule deals with security at the commencement of the action, and does not specifically govern the matter at issue, the intent of the framers of these rules is self-evident.

## NO ATTORNEY SHALL ACT AS BOTH COUNSEL AND SURETY IN THE SAME MATTER

The auditing judge finds that Directive #15 of the Pennsylvania Inheritance Tax Department is in conflict with the rules of court of the orphans' court division and the civil rules of procedure, as well as the American Bar Association's Code of Professional Responsibility. It is a clear violation of the spirit, if not the letter, of these rules and canons of ethics.

This court fully appreciates the mandate which the legislature through section 831 has imposed upon the Secretary of Revenue and the official responsibility thereby incurred. In Fox Estate, 62 D. & C. 2d 514, 531, 24 Fiduc. Rep. 43, 56 (1973), we recently spoke with regard to the collection of inheritance taxes and said: ". . . The State should not be deprived of what is justly owing . . . 'Taxes

are what we pay for civilized society': Compañia General v. Collector, 275 U.S. 87 (Holmes, J., dissenting, page 99, 100 (1927))."

While we remain sympathetic to directives which have for their purpose the accommodation of the public without impairing the collection of inheritance taxes which are justly due the Commonwealth, we are reminded that the legislature has placed broad discretion in the Secretary of Revenue in the issuance of his "consent." To foster his commendable efforts and at the same time eliminate all conflict with rules of court and codes of responsibility, we are so bold as to suggest for the Secretary's consideration a rule of procedure in this court which has worked quite successfully for many years. Pursuant to Rule *130.6, which governs petitions to fix or waive additional security in the sale of real estate, this court will not insist on the appointment of appraisers where there is attached to the petition a *certification by counsel* that in his opinion the estate is solvent. Realizing that certification is not guaranteeing, this court would recommend that the Department of Revenue consider a new directive in which counsel would only "certify" that the estate is solvent and the tax will be paid in order to secure a waiver. This, in our opinion, would eliminate the conflict of ethics inherent in their present procedure.

Facing the present issue, however, the court cannot fault the department for withholding its waiver where the taxpayer delayed payment of the tax and counsel refused to give his personal guarantee pursuant to the directive. The Commonwealth's claim for interest is accordingly approved.

Counsel for the accountants also raises the question whether the Department of Revenue acted properly in charging interest on the inheritance tax due from May 2, 1974, to the date of payment, September 24, 1974. In conjunction with this question, counsel also asks whether the department's application of the moneys paid, first to interest and then to principal, was proper. Nancy Rothkopf, Esq., entered an appearance for the Commonwealth of Pennsylvania, and also filed a very comprehensive brief on these issues.

Since counsel specifically refused to abide by section 831 of the Inheritance and Estate Tax Act of 1961, along with the implementing provisions of Directive #15, it is not improper for the Department of Revenue to assess interest due on the tax until the date of payment. Section 717 of the Inheritance Tax Act states: "If the inheritance tax is not paid before the date it becomes delinquent, thereafter interest on the unpaid tax shall be charged at the rate of six (6) percent annually."

The question of the application of moneys paid toward the inheritance tax is also covered by section 717 of the act. This section specifically requires that payment on delinquent inheritance taxes shall first be applied to any interest due on the tax at the date of payment and then if there is any balance to the tax itself. The rationale behind this section is as clear as the section itself; had the moneys been paid when due, the department would have had use of the collected moneys and could have earned interest thereon. Thus, in applying payments made in this case first to interest and then to principal, the department acted properly in accordance with section 717 of the Act. . . .

## ORDER

And now, October 31, 1975, the account is confirmed nisi.