Woodburn S. WESLEY, Jr., and
Sharon Wesley, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 3:03CV388/RV/MD.

United States District Court,
N.D. Florida,
Pensacola Division.

March 18, 2005.

Daniel C. Perri, Shalimar, FL, for Plaintiffs.

Wendy K. Vann, Washington, DC, for Defendant.

## ORDER

VINSON, District Judge.

Pending is the defendant's motion for summary judgment. (Doc. 32).

Plaintiffs, Woodburn Wesley, Jr. ("Wesley"), and Sharon Wesley, brought an action in this court seeking a refund of tax penalties assessed against them under Title 26, United States Code, Sections 6651(a)(1) & 6654(a). The defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Unless otherwise noted, the following facts appear to be undisputed.

## I. FACTUAL BACKGROUND

Wesley is an attorney licensed to practice in Florida. He holds advanced degrees in business and law from the University of Florida, and operated a law practice between 1997 and 2001, along with another attorney. Wesley's wife, Sharon Wesley, has a Master's degree in business, and generally handles the Wesleys' financial affairs. From the mid–1980s until 2000, the Wesleys have had their taxes prepared by Paul H. Storey ("Storey"), an accountant at Carr, Riggs, & Ingram, LLP ("Carr Riggs"). Wesley's bookkeeper would generally provide all necessary information to Storey in advance of the filing deadline, and Storey would then prepare a tax return on the Wesleys' behalf.

In January of 1999, Sharon Wesley began to assist Wesley's law firm with bookkeeping and administrative matters, after the previous bookkeeper had resigned. In about March of 1999, Sharon Wesley realized that the joint 1997 income tax return for her and her husband had never been filed, and that their 1998 return was due on April 15, 1999. Plaintiffs immediately contacted Storey about the matter. Storey claimed that the 1997 return had been overlooked due to personnel turnover at

Carr Riggs. After lengthy prodding, Storey eventually filed the 1997 tax return on September 7, 2000, and the 1998 tax return on November 6, 2000. Plaintiffs' 1999 return was prepared by CPA Steve Jay, at another certified public accounting firm, and was also filed in November of 2000.

According to the returns eventually filed, the Wesleys had $345,954 in adjusted gross income for the 1997 tax year, with $105,650 owed in federal income tax for that year, only $46,082 of which was withheld or paid in estimated payments. The Wesleys had $437,331 in adjusted gross income for the 1998 tax year, with $138,294 owed in federal income tax, only $42,984 of which was withheld or paid in estimated payments. The Wesleys had $437,471 in adjusted gross income for the 1999 tax year, with $138,294 owed in federal income tax, only $47,531 of which was withheld or paid in estimated payments.

Wesley has suffered from a series of health problems, beginning in 1997. In June of 1997, Wesley was diagnosed with prostate cancer. This required surgery and radiation treatment in Georgia, which left him in a weakened condition. As a result, Wesley did not work at his office from November 1, 1997, to December 22, 1997, although he did remain in telephone contact with his office and clients. Wesley initially returned to work on a reduced schedule of three hours a day for the first three months of 1998. Eventually he returned to a normal workload. On February 19, 2000, Wesley suffered a heart attack. He was hospitalized at West Florida Regional Medical Center, where he underwent heart surgery. Wesley was released from the hospital two weeks later and did not return to work until mid-March, at which point he again worked a reduced schedule of three hours a day. On May 8, 2000, Wesley experienced extreme shortness of breath and was taken by ambulance to West Florida Regional Medical Center. There he was diagnosed with congestive heart failure, which required additional surgery.

Despite these health problems, Wesley managed to work at his law practice for approximately 590 hours in the last half of 1997, 1770 hours in 1998, 2140 hours in 1999, and 1520 hours in 2000. He tried between fifty and sixty workers compensation cases during 1997, 1998, 1999, and 2000. The plaintiffs also managed to pay all of their other bills on a timely basis during this period.

In addition to interest accrued due to late payment of taxes, plaintiffs were assessed penalties under Title 26, United States Code, Section 6651(a) for failure to timely file a tax return; $13,402.80 for 1997, $22,741.42 for 1998, and $20,421.68 for 1999. They were assessed penalties under Title 26, United States Code, Section 6654(a) for underpayment of their quarterly estimated taxes; $4,730.94 for 1997, $3,160.00 for 1998, and $4,105.44 for 1999. The plaintiffs were also assessed penalties for failure to pay penalties; $8,735.20 for 1997, $9,601.93 for 1998, and $4,009.33 for 1999. Plaintiffs paid the penalties, and are now seeking a refund of those amounts.

## II. DISCUSSION

### A. *Summary Judgment Standard*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the exis-

tence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *see also Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996).

However, summary judgment is improper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See id.; see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000); *Ramsey v. Leath*, 706 F.2d 1166, 1170 (11th Cir.1983). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir.1999).

B. *Section 6651(a)*

■ Title 26, United States Code, Section 6651(a) imposes penalties for the late filing of tax returns, or the late payment of taxes. An exception is provided for cases where failure to timely file a return was "due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1). "Willful neglect", as used in the statute, means a conscious, intentional failure or reckless indifference. *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). "Reasonable cause" is defined in federal regulations to mean a situation in which a "taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 C.F.R. § 301.655-1(c). To avoid penalties under Section 6651(a), a taxpayer must demonstrate both that they lacked willful neglect, and that they acted with reasonable care. *Boyle, supra*, 469 U.S. at 245, 105 S.Ct. at 689, 83 L.Ed.2d at 627–28.

■ Because different factual situations apply to each of the years the Wesleys failed to file a timely return, each year must be addressed separately. In the case of the 1997 return, plaintiffs' case is very weak. Plaintiffs argue that their reliance on Storey, combined with the disability caused by Wesley's health problems, provides them with a reasonable cause for not filing their returns. *Boyle* makes clear, however, than an individual's duty to file tax returns under Section 6651(a) cannot be delegated, and that reliance on a third party, even a CPA, is not a reasonable cause for late filing. *Id.*, 469 U.S. at 250, 105 S.Ct. at 692, 83 L.Ed.2d at 630. *See also McMahan v. Commissioner*, 114 F.3d 366 (2nd Cir.1997); *Estate of Fleming v. Commissioner*, 974 F.2d 894 (7th Cir. 1992); *Denenburg v. United States*, 920 F.2d 301 (5th Cir.1991). If a person were allowed to delegate his duty to file a tax return, this would seriously impede the Government's ability to collect taxes fairly and efficiently. *Boyle, supra*, 469 U.S. at 249, 105 S.Ct. at 692, 83 L.Ed.2d at 630. Justice Holmes is often quoted for the proposition that "Taxes are the price we pay for civilized society." *See Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100,

48 S.Ct. 100, 105, 72 L.Ed. 177 (1927) (Holmes, J., dissenting). Our nation collects income taxes on a system of self-assessment. The only way to ensure that income taxes are properly collected is to maintain strict filing standards. *Boyle, supra,* 469 U.S. at 249, 105 S.Ct. at 692, 83 L.Ed.2d at 630.

█ Admittedly, preparing an income tax return can be a complicated matter, confusing even the brightest of citizens. If the Wesleys had reasonably relied on advice from Storey that they did not need to file a tax return, perhaps this could be considered a reasonable cause for not filing. *Boyle, supra,* 469 U.S. at 250, 105 S.Ct. at 692, 83 L.Ed.2d at 630–31. What they could not do was simply assume that Storey would comply with the filing deadline and file for them. *Id.* U.S. at 250, 105 S.Ct. at 692, 83 L.Ed.2d at 630 ("To say that it was 'reasonable' for [a taxpayer] to assume that the attorney would comply with the statute may resolve the matter as between them, but not with respect to [the taxpayer's] obligations under the statute."). They must personally review and sign their tax return, even if it is prepared by someone else.

█ Nor do Wesley's health problems excuse compliance. *Boyle* does leave open the possibility that reliance on a third party might constitute reasonable cause if a taxpayer suffers from a disability that renders him "incapable by objective standards of meeting the criteria of 'ordinary business care and prudence.'" *Id.* U.S. at 249 n. 6, 105 S.Ct. at 692, 83 L.Ed.2d at 629; *see also In re Sanford,* 979 F.2d 1511 (11th Cir.1992) (holding that a court may find reasonable cause under Section 6651(a) if a taxpayer convincingly demonstrates that a

disability beyond his control rendered him unable to exercise ordinary business care). However, the type of disability required here is "one that because of severity or timing makes it virtually impossible for the taxpayer to comply—things like emergency hospitalization or other incapacity occurring around tax time." *In re Carlson,* 126 F.3d 915, 923 (7th Cir.1997).

Wesley was diagnosed with prostate cancer in June of 1997. While this illness required Wesley to reduce his law practice some during the end of 1997 and the first few months of 1998, he was still able to work and by April he was working approximately 140 hours a month. Wesley's heart attack did not occur until February of 2000, almost two years after the 1997 return was initially due, and about a year after he had discovered the non-filing of the 1997 return.[1] Wesley managed to try between fifty and sixty cases workers compensation cases during the years in question, despite his medical condition, and met his other financial obligations in a timely manner. Wesley's health problems from 1997 to February of 2000 could not have prevented him from exercising ordinary business care. *See Marrin v. Commissioner,* 147 F.3d 147 (2nd Cir.1998) (holding that disability did not excuse failure to file where taxpayer was able to actively engage in securities and futures transactions). His prostate cancer treatment and recovery did not constitute an incapacitating disability, and cannot be an excuse for not timely filing the 1997 return.

This holding is in keeping with the decisions of the Tax Court, which has routinely declined to find reasonable cause in cases where a disability is not incapacitating.

---

**1.** According to the defendant's Statement of Material Facts (Doc. 33), the Plaintiffs filed for, and received two extensions on their 1997 return, pushing the due date back to October 15, 1998. Presumably this was done by someone at Carr Riggs on behalf of the Wesleys, since it is their contention that they did not know the return had not been filed until March of 1999.

*See, e.g., Watts v. Commissioner*, T.C. Memo.1999–416, 1999 WL 1247548 (U.S.Tax. Ct.1999) (holding that petitioner who cared for sick child and sick mother, but was able to work as well, did not establish reasonable cause for late filing); *Boone v. Commissioner*, T.C. Memo.1997–102, 1997 WL 81776 (U.S.Tax.1997) (holding no reasonable cause where taxpayer who suffered brain hemorrhaging failed to file returns for more than two years from due date, but was able to work as income tax preparer during period of time during which returns were overdue).

Further, it appears that Wesley's prostate cancer was not even a contributing factor in the Plaintiffs failure to file the 1997 return. It is undisputed that the Wesleys only realized that they had not filed the 1997 return when Sharon Wesley took over the bookkeeping duties at Wesley's law firm in early 1999. She did this, not because of Wesley's health problems, but because the previous bookkeeper had quit in November of 1998. Nothing in the record indicates that Wesley would have realized his failure to file a return sooner if he had not been diagnosed with prostate cancer. In sum, there is simply nothing in the record which supports a "reasonable cause" for failing to timely file the 1997 return.

█ The situation with the 1998 return is somewhat different. The Wesleys discovered that their 1997 return had not been filed before the 1998 return came due. Apparently, they did not believe that they could file their 1998 tax return until they got the information contained in the 1997 return, after the 1997 return had been prepared. Thus, once the Wesleys discovered that Storey had not completed their 1997 return, they were essentially left with two options: (1) They could wait for Storey to complete their 1997 (and 1998) returns, or they could retrieve their tax records from Storey and have their returns prepared by another CPA. Given their long history with Storey, the Wesleys choose the first option. This, it turned out, was a mistake. After being confronted in March 1999 about the Wesleys' 1997 return having not been completed, it took Storey almost eighteen months to finally complete their 1997 return. This cannot be characterized as reasonable cause, despite Plaintiffs contention that during this time they were in regular contact with Storey, sometimes as often as every week, trying to get him to finish the returns.

It is not easy to say exactly when "ordinary business care and prudence" would have required the Wesleys to seek out a new CPA to finish their return rather than continuing to rely on Storey. The Wesleys had relied on Storey for many years, which may have made them more willing to stick with him rather than seek out another CPA. Finding a new CPA would have been inconvenient, requiring the Wesleys to retrieve their tax records from Storey, and then seek out and pay another CPA to become fully familiar with their finances, something Storey already knew. This is particularly true if, as the Wesleys contend, they were repeatedly being told that the return was almost complete, or would be completed shortly. Obviously, after a certain point these assurances become meaningless, but it is difficult to say at what point that would occur. Nevertheless, 18 months is plainly far too long a time to continue to rely on Storey's assurances. The Wesleys asked for, and received, two extensions for their 1998 return, so that the return was not untimely until after October 15, 1999. When it became clear that Storey was not even going to be able to complete the 1997 return by October of 1999, the Wesleys should have taken some further action. They certainly should not have let almost another entire year go by before the 1997 and 1998 returns were finally filed. On these facts, no

reasonable jury could find that the Wesleys had reasonable cause for failing to file their 1998 tax return in a timely manner.

█ The situation with the 1999 return is even more complicated. It appears that, by the time the 1999 return came due on April 15, 2000, the Wesleys had exhausted their patience with Storey, and had sought out a new CPA to prepare their 1999 return. However, for reasons that are not clear in the record, this new CPA was not able to finish the Wesleys' 1999 return on time, even after receiving two extensions, which extended the filing date of the return to October 15, 2000.

However, Wesley had additional medical complications in 2000 which may have affected his 1999 return. Wesley suffered a heart attack in February on 2000, several months before the 1999 return was due. He also suffered complications from heart surgery on May 8, 2000, after the Wesleys had filed their first extension on the 1999 return. These were serious illnesses, and the record is unclear to what extent they are responsible for the delays that led to the 1999 return being filed a month late. Lacking such information, I cannot say as a matter of law that Wesley's heart attack and resulting medical troubles, coupled with the change of CPAs, were not a reasonable cause for the Wesleys failure to timely file their 1999 return.

█ There is some question as to whether Wesley's incapacity alone can excuse the failure to file the tax return. Since Wesley filed jointly with his wife, the obligation to file was joint, and applied equally to both parties. Normally, the incapacity of one party to a joint return will not excuse the failure to file that return if the incapacity did not affect the other party. *See Pehrson v. Commissioner,* T.C. Memo.1997–344, 1997 WL 420679 (U.S.Tax Ct.1997). Nevertheless, in this case it appears that Wesley's health problems in 2000 were severe enough to require Sharon Wesley to largely abandon her other work-related responsibilities. Sharon Wesley contends that she was unable to work at all from February 18, 2000, through March 2000 and from May 8, 2000, through June 2000. She estimates that, from February to June 2000, she worked from 40 to 80 hours a month. If true, this indicates that responding to Wesley's illness may have impaired her ability to exercise ordinary business care and prudence. Thus, the defendant's motion must be denied with respect to penalties arising from the late filing of the 1999 return.

### C. *Section 6654(a)*

█ During the years 1997, 1998, and 1999, the Plaintiffs did not make any estimated quarterly tax payments as required by law. For this failure, they were assessed penalties under Title 26, United States Code, Section 6654(a). Section 6654(a) penalties are mandatory, and must be imposed unless a statutory exception applies. *Recklitis v. Commissioner,* 91 T.C. 874, 1988 WL 116976 (U.S.Tax Ct.1988). Reasonable cause is not an excuse for underpayment. Treas. Reg. § 1.6654–1(a). Title 26, United States Code, Section 6654(e)(3)(A), provides that a taxpayer may avoid these penalties if they can show that "by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience."

█ Nothing in the record indicates that imposing the assessed penalties would be "against equity and good conscience." The plaintiffs claim that they were not aware of their duty to make estimated tax payments until the year 2000. This is hard to believe, but even if true, it would not be an excuse. Good faith is simply not an excuse for failure to make estimated tax payments. *Smith's Estate v. Commissioner,* 313 F.2d 724 (8th Cir.1963); *Sawyer v.*

*United States,* 426 F.Supp. 572 (W.D.La. 1977).

 Nor is the failure to make estimated tax payments excused by Storey's delay. While it may be true that the Wesleys could not prepare their 1998 and 1999 returns until the 1997 return was finalized, nothing prevented them from making the estimated tax payments under Section 6654(a). Further, since the Wesleys claim they did not know that they needed to make estimated tax payments, any delay on Storey's part cannot be a contributing factor to their failure to make those payments. Therefore, the Section 6654(a) penalties were properly imposed.

## III. CONCLUSION

For the above reasons, the defendant's motion for summary judgment (Doc. 32) is GRANTED as to the penalties arising under Section 6654(a), and as to $36,144.22 of the penalties arising under Section 6651(a) for calendar years 1997 and 1998. The defendant's motion is DENIED with respect to Section 6651(a) penalties for the calendar year 1999. The Clerk will enter judgment accordingly.