**ESTATE OF Jennie FLEMING, Deceased, Donald K. Fleming, Executor, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 90–2576.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1991.

Decided Sept. 9, 1992.

Richard L. Manning (argued), Chicago, Ill., for petitioner-appellant.

Abraham N.M. Shashy, Jr., I.R.S., Gary R. Allen, Robert S. Pomerance, Calvin C. Curtis (argued), Dept. of Justice, Tax Div., Appellate Section, Charles S. Casazza, U.S. Tax Court, Washington, D.C., for respondent-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and REYNOLDS, Senior District Judge.[*]

REYNOLDS, Senior District Judge.

In February 1988, the Commissioner of Internal Revenue determined that Jennie Kingsley Fleming's ("Jennie") estate owed an estate tax deficiency and a penalty for late filing because a disclaimer and return filed by the estate were late, thereby resulting in a tax deficiency. The estate petitioned the United States Tax Court ("Tax Court") for a redetermination of the tax deficiency, and the Tax Court concluded that the estate had untimely filed its disclaimer and tax return. The estate appealed and, for the following reasons, the Tax Court is affirmed.

## I. FACTS

On September 23, 1983, Jennie's husband Chester Fleming ("Chester") died. Chester's will bequeathed the residue of his estate to Jennie, and if she did not survive him, to his children. On January 26, 1984, Chester's will was admitted to probate.

On May 13, 1984, Jennie died. Jennie's will was admitted to probate on May 22, 1984, and bequeathed the residue of her estate to Chester, and if he did not survive her, to her children. The executor of both

---

[*] The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

Chester's and Jennie's estates was their son, Donald Fleming ("Donald").

On July 19, 1984, Donald executed a petition to disclaim Jennie's interest in the assets of Chester's estate. On August 1, 1984, Philip Locke ("Locke"), the attorney for both Fleming estates, filed the disclaimer petition with the probate court, and on August 2, 1984, the court granted the petition.

Jennie's federal estate tax return ("the return") was due on February 13, 1985. Donald prepared the return. He was concerned with what Jennie's house should be valued at on the return, because the house had been appraised at $89,000 after Jennie's death and Donald had received an offer on the house for $136,500 just before the return was due. Donald discussed this concern with Locke. Donald decided to value the house at $89,000 on the return, and planned to amend the return to reflect the higher value if the house sold.

On February 2, 1985, Donald gave a rough draft of the return to Locke. On February 9, 1985, Donald discussed the return with Locke and Locke's assistant, and typed a final copy reflecting the changes he had discussed with Locke. There was no tax due on the completed return. On February 11, 1985, Locke's assistant sent a messenger to pick up the return from Donald. Locke's office was to file the return, and told Donald it was filed. The Internal Revenue Service has no record of receiving the return.

Approximately two weeks later Donald prepared a second return to change the value of Jennie's house, and marked "AMENDED" on the top in red. He gave the return to Locke to review. Locke's assistant attempted to dissuade Donald from filing the amended return, but Donald insisted that it was necessary. On May 28, 1985, the Internal Revenue Service received the amended return and processed it as the original.

## II. ANALYSIS

This court has jurisdiction over this appeal pursuant to 26 U.S.C. § 7482(a), which provides that the United States Courts of Appeal have exclusive jurisdiction to review Tax Court decisions. The two issues before this court are whether Jennie's estate timely filed the disclaimer of Chester's assets and whether the estate's late filing of Jennie's federal estate tax return was due to reasonable cause.

### A. Timely Filing of the Disclaimer

■ The statute governing the filing of disclaimers provides in relevant part that:

> the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if—
> (1) such refusal is in writing,
> (2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of—
> (A) the day on which the transfer creating the interest in such person is made....

26 U.S.C. § 2518. The parties are in disagreement concerning what date completed the transfer creating Jennie's interest in Chester's assets, which date began the nine-month disclaimer period running.

The estate argues that the transfer of Chester's assets to Jennie for § 2518 purposes was made on the date that Chester's will was admitted to probate, and the government argues it was made on the date of Chester's death. Chester's will was admitted to probate on January 26, 1984, and the petition of August 1, 1984, to disclaim Jennie's interest would therefore fall within the nine-month period required by § 2518. On the other hand, if the transfer was made upon Chester's death, the disclaimer would be untimely.

The estate argues that Illinois law determines when the transfer of Chester's assets was made.[1] The estate asserts that

---

**1.** The estate argues that this court's decision in *Kennedy v. Comm'r of Internal Revenue*, 804 F.2d 1332 (7th Cir.1986), supports the estate's proposition that Chester's will had to be deemed

Chester's assets were transferred to Jennie only after Chester's will was admitted to probate, citing Illinois law which states that:

> Every will when admitted to probate as provided by this Act is effective to transfer the real and personal estate of the testator bequeathed in that will.

Ill.Ann.Stat. ch. 110½, para. 4–13 (Smith–Hurd 1976).

Contrary to the estate's assertions, however, this Illinois statute does not disallow testamentary gifts to be transferred at death; the statute does not state that a testator's assets are transferred only after a will is admitted to probate or that a transfer of property, for § 2518 purposes, cannot occur at death.

A review of legislative history demonstrates that the Congressional purpose in enacting § 2518 was to create "definitive rules concerning disclaimers for estate and gift tax purposes to achieve uniform treatment" by providing "a uniform standard ... for determining the time within which a disclaimer must be made." H.R.Rep. No. 1380, 94th Cong., 2d Sess. 66, 67 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3419, 3420–3421. Looking to varying state law to determine when a transfer is made would defeat the Congressional goal of uniformity. And, as discussed above, Illinois law does not directly address the present issue.

The House Conference Committee further explains that:

> a transfer is considered to be made ... upon the date of the decedent's death with respect to testamentary transfers.

*Id.* at 67, 1976 U.S.C.C.A.N. at 3421. The Treasury Regulations lend further support to the Commissioner's position that the transfer of Chester's assets to Jennie was made at Chester's death:

> With respect to transfers made by a decedent at death ... a taxable transfer occurs upon the date of the decedent's death.

valid by Illinois law before any transfer took place. That case involved a gift of joint tenancy with the right of survivorship, and therefore is not dispositive of the present issue nor prohibi-

26 C.F.R. § 25.2518–2(c)(3). This court concludes that the transfer of Chester's assets to Jennie was made at the time of Chester's death. The disclaimer was therefore not filed within the nine-month period as required by § 2518.

### B. *Reasonable Cause for Failure to Timely File Return*

■ The estate argues that its failure to timely file Jennie's return was due to "reasonable cause," thereby precluding the penalty imposed by 26 U.S.C. § 6651(a)(1), which states in relevant part:

> In case of failure ... to file any return ... on the date prescribed therefor ... unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

In *United States v. Boyle*, the Supreme Court addressed the issue of whether reliance on an attorney constituted reasonable cause for an executor's failure to timely file an estate tax return. *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). In *Boyle*, the executor contacted the estate's attorney a number of times to inquire about the filing of the estate's tax return, and was told the return would be filed on time. *Id.* at 242–243, 105 S.Ct. at 688. The return was, however, filed three months late. *Id.* at 243, 105 S.Ct. at 688.

The Court in *Boyle* discussed various circuits' conflicting interpretations regarding when reliance on an attorney will constitute reasonable cause for failure to timely file an estate tax return. The Court stated that:

tive of our conclusion that a transfer for § 2518 purposes in the present context took place at Chester's death.

We need not dwell on the similarities or differences in the facts presented by the conflicting holdings. The time has come for a rule with as "bright" a line as can be drawn consistent with the statute and implementing regulations.

*Id.* at 248, 105 S.Ct. at 691 (footnote omitted). The Court ruled that a taxpayer's reliance on an agent regarding the timely filing of a tax return does not constitute reasonable cause to excuse a late filing. *Id.* at 252, 105 S.Ct. at 693.

The estate argues Donald knew the return's due date and made every possible effort to file the return on time. The estate urges this court to excuse the late filing because it occurred due to Locke's rather than Donald's mistake; Donald was told that the return was filed. But the fact is that Donald relied on Locke to file the return. The Court's holding in *Boyle* is clear. That holding compels the conclusion that Chester's reliance on Locke to file the return does not constitute reasonable cause to excuse the late filing of Jennie's federal estate tax return.

For the foregoing reasons, the judgment of the Tax Court is affirmed.