In re: SEARCH OF 2847 EAST HIGGINS ROAD, ELK GROVE VILLAGE, ILLINOIS.

Appeal of: Michael G. Wellek.

No. 04–2874.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 2004.

Decided Dec. 1, 2004.

Marsha A. McClellan (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff-Appellee.

Harvey M. Silets (argued), Katten Muchin Zavis Rosenman, Chicago, IL, for Defendant-Appellant.

Before POSNER, KANNE, and ROVNER, Circuit Judges.

POSNER, Circuit Judge.

In May of 2003, IRS agents executed a warrant to search a warehouse for evidence and fruits of suspected violations of federal tax laws by Michael Wellek, the owner of a string of strip joints. In the warehouse the agents found and seized more than $12 million in cash, together with business records. Two months later Wellek moved unsuccessfully in the district court under Fed.R.Crim.P. 41(g) (formerly 41(e)) for the return of the currency and records, and he now appeals to us from the denial of the motion. We take up the currency first.

After counting the money and deciding that the bills themselves had no evidentiary value, the government deposited them in a bank account, thus changing its possessory interest in the bills into a debt from the bank. What precisely the bank did with the bills we do not know—most likely they were used to make cash payments to the bank's customers—but it is of no significance because, as we said, the bills themselves are not claimed to have any value as evidence of Wellek's violations. The government could still resist the Rule 41(g) motion if the money didn't belong to Wellek—but, so far as appears, it did, as we'll see—or if it was a fruit of the alleged violations—but that is not contended either.

Had Wellek stolen cash from an IRS office, that cash would be a fruit of his crime, and the government could seize it for use in prosecuting him, Fed.R.Crim.P. 41(c)(2), and could also seek its forfeiture in civil or criminal proceedings. 18 U.S.C. §§ 981(a)(1), 982(a)(1); *United States v. Emerson*, 128 F.3d 557, 566 (7th Cir.1997). If the government deposited the cash in a bank, thus exchanging the cash for a claim against the bank, the money in the account would retain its character as a fruit of crime. *United States v. U.S. Currency Deposited in Account No. 1115000763247*, 176 F.3d 941, 945–47 (7th Cir.1999); *United States v. Daccarett*, 6 F.3d 37, 54–55 (2d Cir.1993). But the income from a lawful business (and, as far as we can judge, Wellek's tawdry enterprises are legal) is not a fruit of crime even if the recipient of the income refuses, in criminal violation of the tax laws, to pay the tax owing on the income. The currency in the warehouse belonged to Wellek, not to the IRS. The fact that he had $12 million in currency in a warehouse is evidence of a criminal violation of the tax laws, though Wellek has yet to be charged with any crime, but the fact that $12 million in currency was found in the warehouse is acknowledged; the money in the account isn't going to be turned back into cash and paraded before the jury as evidence of a tax violation. Wellek's Rule 41(g) motion should have been granted as soon as the government realized that the currency had no evidentiary value and was not the fruit of a crime (to repeat, the income on which one has refused in crimi-

nal violation of federal law to pay income tax is not itself a fruit of that criminal violation).

This is not to say that the government had to write Wellek a check for $12 million. It had already filed a tax lien against his property for $3 million, and the $12 million was his property. Shortly after the district court denied Wellek's Rule 41(g) motion, the IRS made a jeopardy assessment, 26 U.S.C. § 6861, and filed a jeopardy levy, § 6331, against Wellek's property, in the amount of $11.5 million. The district court upheld both actions. *Wellek v. United States*, 324 F.Supp.2d 905, 910, 913–14 (2004). At argument Wellek's lawyer said that Wellek was willing to let the entire $12 million remain in the government's possession pending the determination of his tax liability.

Therefore, argues the government, the appeal is moot. We think not. It is possible, indeed likely (and certainty of consequence is not required to keep a case from becoming moot, *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Church of American Knights of Ku Klux Klan v. City of Gary*, 334 F.3d 676, 678 (7th Cir.2003); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 909–10 (7th Cir.2003); *Churchill County v. Babbitt*, 150 F.3d 1072, 1078–80, amended, 158 F.3d 491 (9th Cir.1998)), that our dismissing Wellek's challenge to the denial of his Rule 41(g) motion would increase his tax bill. Presumably as long as property is in the government's possession as evidence or fruits of the owner's alleged crime, the owner cannot use it to satisfy debts, even debts owed the government. If so, then interest and penalties on Wellek's unpaid taxes mounted up during the period in which the government was holding his $12 million as evidence or fruits of tax crimes that he was suspected of having committed. We know this is the government's

position because the amount of the IRS's jeopardy levy includes interest for the period since the execution of the search warrant. Our simply declaring Wellek's Rule 41(g) motion moot would leave him having to pay the interest and penalties that have accrued while the money that he could have used to pay the government was being held on the spurious ground that it was evidence or fruits of crime and therefore could not be used to pay his tax debts. He might, we suppose, try to argue the merits of his Rule 41(g) motion, by way of defense to the IRS's claim for interest and penalties, when the government tries to collect the taxes, with interest and penalties, that it claims Wellek owes. But the court in such a tax proceeding might consider itself bound by the ruling of the district court in this case denying the Rule 41(g) motion.

■ Our reversal of the denial would have the effect of revesting Wellek with his property as of the date that the motion should have been granted, enabling him to argue that the IRS should apply the money to his unpaid taxes as of that date. Cf. *Morlan v. Universal Guaranty Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir.2002). The fact that the money has been subjected to a jeopardy levy and therefore cannot be withdrawn from the bank by Wellek doesn't mean it isn't his money that he can use to reduce his tax liability. If he can prove that he lacked any other means of paying his taxes, the government's unlawful possession of his property pursuant to the search warrant, which prevented him from paying the taxes with the $12 million, would constitute "reasonable cause" for his inability to pay; that would excuse his having to pay interest, 26 U.S.C. § 6404(a)(1); *In re Carlson*, 126 F.3d 915, 920 (7th Cir. 1997); *United States v. Ripa*, 323 F.3d 73, 85–86 (2d Cir.2003); *Miller v. Commissioner*, 310 F.3d 640, 643–44 (9th Cir.2002), and penalties, 26 U.S.C. § 6651(a); 26

C.F.R. § 301.6651–1(c); *United States v. Boyle*, 469 U.S. 241, 245–47, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); *In re Carlson*, supra, 126 F.3d at 921; *Estate of Fleming v. Commissioner*, 974 F.2d 894, 896–97 (7th Cir.1992); *Synergy Staffing, Inc. v. IRS*, 323 F.3d 1157, 1160 (9th Cir.2003), by reason of his failure to pay taxes during the relevant period.

The government cites cases denying motions such as Wellek's when there had been a tax levy on the money that the movant is trying to get back. *United States v. White*, 660 F.2d 1178, 1183–85 (7th Cir.1981); *United States v. Fitzen*, 80 F.3d 387, 388–89 (9th Cir.1996); *United States v. Francis*, 646 F.2d 251, 261–63 (6th Cir.1981). They are not on point. They contain some broad language, but judicial language is generally and in this instance limited by context. They are either cases in which the movant's ownership of the money was undetermined, as where the government had commenced forfeiture proceedings (*White*), or cases in which, so far as appeared, the movant had nothing to gain from proceeding under Rule 41(g) rather than contesting the levy (*Fitzen* and *Francis*). Not only is Wellek's ownership of the money as yet unchallenged, but he may well have something to gain from the granting of his Rule 41(g) motion, namely the abatement of the interest and penalties that accrued before the levy.

It could be argued that once the government exchanged the currency—the evidence it had seized—for a bank credit, Wellek could no longer file a Rule 41(g) motion, because, as we explained in *Okoro v. Callaghan*, 324 F.3d 488, 490–92 (7th Cir.2003), the filing of such a motion is not a proper means of commencing a suit for restitution. But the government, remember, claims to be holding the $12 million pursuant to its search warrant, and Rule 41(g) is the proper means of obtaining the return of property so held. It is the government itself that argues, however perversely, that it is holding the $12 million as evidence or fruits of crime. The reason that Rule 41(g) is not a proper vehicle for bringing a suit for restitution against the federal government is that the rule does not waive the sovereign immunity of the United States. *Okoro v. Callaghan*, supra, 324 F.3d at 491; *Adeleke v. United States*, 355 F.3d 144, 151 (2d Cir.2004); *United States v. Hall*, 269 F.3d 940, 943 (8th Cir.2001). But all these cases—as well as every case in which a Rule 41(g) motion has been granted—assume that sovereign immunity does not block an equitable action for the return of property seized pursuant to a search warrant. In fact Wellek is not seeking the return of the property seized from him, namely the currency taken from the warehouse. He is seeking its equivalent. But the government, by insisting that the money it is holding is evidence or fruits of crime, is treating it as property held pursuant to the warrant and subject therefore to a Rule 41(g) motion.

Technically, it is true, because Wellek's currency was exchanged for a bank credit the property that had been seized vanished, much as when property is destroyed—and Rule 41(g), as we have just said, cannot be used to get around sovereign immunity. See also *United States v. Potes Ramirez*, 260 F.3d 1310, 1314–16 (11th Cir.2001); *United States v. Jones*, 225 F.3d 468 (4th Cir.2000). The court in *Kalodner v. Abraham*, 310 F.3d 767, 769–70 (D.C.Cir.2002), extended sovereign immunity to a situation in which the government is holding money merely as an escrow agent. This suggests that it is not the nature of the government's claim, but simply whether (fungible) money is in the government's possession, that triggers the immunity. That is not so odd a result as may seem. It doesn't mean that the equi-

table owner of the money held in escrow has no remedy, or stated differently that the government has the right to keep the money; it just means that the owner must proceed in the Court of Federal Claims rather than the district court, if as here he is claiming more than $10,000. 28 U.S.C. §§ 1346(a)(2), 1491.

But while we're being technical, we should note also that the government is not being asked to give up any money to Wellek. It remains in the government's possession to enable it to collect the taxes that Wellek owes. What is involved in reversing the district court is recharacterizing the government's possession of the money as being based on the jeopardy levy rather than the search warrant, a recharacterization that may benefit Wellek down the road but gives him no immediate right to raid the Treasury.

■ So we do not think the grant of the Rule 41(g) motion is barred by sovereign immunity and in any event if the government fails to raise a defense of sovereign immunity—and it failed here—"a court can ignore it." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); see also *Patsy v. Board of Regents*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 871–72 (7th Cir.1999); *Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 448–49 (2d Cir.1999). These cases (all Eleventh Amendment, i.e., state sovereign-immunity, cases, but we don't see why a different principle should apply when the entity claiming sovereign immunity is the United States, cf. *United States v. County of Cook*, 167 F.3d 381, 387–89 (7th Cir.1999)), make clear that the court is not *required* to ignore sovereign immunity even if the defendant fails to raise it. But given the difficulty of the issue in this case, it seems best to bypass it for more secure ground.

■ We have last to consider the part of Wellek's Rule 41(g) motion that seeks the return of the business records seized from the warehouse. The search warrant sought records only through 2001, and some of the records seized, it turned out, were for subsequent years. Given that the records, though relating to Wellek's very recent and even current business operations, were found in a warehouse along with an extraordinary amount of currency, the government certainly had reason to think they might contain evidence bearing on Wellek's suspected violations of the tax laws. Obviously a current record can cast light on the past conduct of the business to which the record pertains. It is a separate question whether the government needs the originals of these records. But it says it does, pointing out without contradiction that the records contain handwritten notations and that should it become necessary to determine whose handwriting they are in it might be harder to conduct the necessary tests on copies than on originals. Brian Found & Doug Rodgers, "Documentation of Forensic Handwriting Comparison and Identification Method: A Modular Approach," 12 *J. Forensic Document Examination* 1, 25–26 (1999). The government has allowed Wellek access to the records whether to make copies of them or to conduct his own handwriting tests if he wants to. The part of the Rule 41(g) motion that seeks the return of the records was therefore properly denied.

The decision of the district court is affirmed in part and reversed in part and the case returned to that court for further proceedings consistent with this opinion.