# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00428-CV

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants**

**v.**

**STP Nuclear Operating Company, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-03-002053, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## O P I N I O N

Appellants Susan Combs,[1] Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas,[2] appeal from the trial court's grant of summary judgment in favor of appellee STP Nuclear Operating Company ("STP"). In three issues, the Comptroller argues that the trial court erred in granting summary judgment in favor of STP because the State may properly collect independently procured insurance tax from STP consistent with Due Process, Equal Protection, and the McCarran-Ferguson Act. Alternatively, the Comptroller argues that, even if STP is not liable for the independently procured insurance tax, STP would be liable for

---

[1] We substitute Susan Combs, in her official capacity, as successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas. *See* Tex. R. App. P. 7.

[2] Because the interests of the Comptroller and the Attorney General are aligned, we refer to the appellees collectively as the "Comptroller."

unauthorized insurance tax. For the reasons discussed below, we reverse the trial court's judgment and render judgment in favor of the Comptroller.

## FACTS AND PROCEDURAL BACKGROUND

STP is a Texas corporation that maintains its principal place of business in Matagorda County. STP operates the South Texas Nuclear Project on behalf of its owners—the City of San Antonio, the City of Austin, and NRG South Texas, L.P., formerly Texas Genco, LLP. As a condition of receiving a license to operate the plant from the Nuclear Regulatory Commission, STP is required to carry primary and excess property insurance. STP procures this insurance from Nuclear Electric Insurance Limited ("NEIL").[3]

NEIL is a mutual insurance company composed of all of the utility companies who own or operate nuclear power plants in the United States. NEIL is incorporated in Bermuda and headquartered in Delaware. NEIL is not licensed to conduct the business of insurance in Texas or any other state except Delaware.[4] Even though NEIL insures nuclear power plants across the United States, NEIL has developed "Operating Procedures" to avoid state insurance laws and regulations. For example, NEIL may conduct business meetings in any state, but these meetings "shall not include any activities which could be viewed as conducting the business of insurance, for example . . . soliciting new insurance business or negotiating policy terms with prospective insureds." NEIL's Operating Procedures require its insureds to comply with the exemptions

---

[3] It is undisputed that NEIL is currently the only insurer who underwrites insurance for nuclear power plants in the United States.

[4] NEIL is a registered insurer under the Captive Insurance Companies Act of Delaware. *See* Del. Code Ann. tit. 18, §§ 6901-17 (2004), *repealed by* 75 Del. Laws, c.150 (2005), *now* Del. Code Ann. tit. 18, §§ 6901-63 (2006).

provided in state law wherever necessary to protect NEIL from running afoul of state unauthorized insurance laws. All of NEIL's insureds must follow the Operating Procedures to obtain coverage.

Many states provide various exemptions from state unauthorized insurance laws. Examples of these exemptions include the "independently procured," "industrial insured," and "nuclear insured" exemptions. These exemptions allow insurance companies, like NEIL, to conduct the business of insurance within a particular state without satisfying all of that state's licensing and regulatory requirements. In Texas, the legislature has provided an "independently procured" exemption. *See* Tex. Ins. Code Ann. § 101.053(b)(4) (West Supp. 2006). To satisfy this exemption, STP must report the insurance transaction and pay the premium tax due under chapter 226 of the insurance code. *Id.* As one of NEIL's insureds, STP is required by NEIL's Operating Procedures to pay any premium taxes due in Texas in order to maintain NEIL's "independently procured" exemption from state unauthorized insurance laws.[5]

STP paid premium taxes as required under section 101.053(b)(4) and chapter 226 of the Texas Insurance Code for the 2002, 2003, and 2004 calendar years.[6] For each of these three years, STP paid the independently procured insurance tax under protest. In 2003, STP filed suit against the Comptroller seeking a refund of its tax payment for 2002 on the grounds that the independently procured insurance tax was unconstitutional and violated the McCarran-Ferguson Act.

---

[5] The record reflects that NEIL requires its insureds to pay premium taxes in eight states, including California, Connecticut, Georgia, Maryland, Missouri, New Hampshire, Pennsylvania, Texas and Wisconsin.

[6] STP paid taxes in the amount of $115,287.80 for the year ending December 31, 2002; $125,848.14 for the year ending December 31, 2003; and $154,235.67 for the year ending December 31, 2004.

STP later amended its petition to include a refund request for its tax payment for 2003. Then, in 2005, STP filed a separate suit against the Comptroller seeking a refund of its tax payment for 2004.

The trial court consolidated both suits, and the parties filed cross-motions for summary judgment. The trial court granted STP's motion for summary judgment and denied the Comptroller's motion for summary judgment finding that the independently procured insurance tax violated the McCarran-Ferguson Act.

## ANALYSIS

On appeal, the Comptroller argues that the trial court erred in granting summary judgment in favor of STP because the Comptroller may properly collect the independently procured insurance tax from STP without violating federal law or the Constitution. Alternatively, the Comptroller argues that even if STP is not liable for the independently procured insurance tax, STP would be liable for unauthorized insurance tax. STP counters that the trial court's summary judgment was proper and consistent with Supreme Court precedent in *State Board of Insurance v. Todd Shipyards Corp.*, 370 U.S. 451 (1962), and this Court's precedent in *Dow Chemical Co. v. Rylander*, 38 S.W.3d 741 (Tex. App.—Austin 2001, pet. denied).

### *Standard of Review*

We review the trial court's grant of summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The standards for summary judgment are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of

4

law. *Id.* at 548. When determining whether there is a disputed issue of material fact precluding summary judgment, we take all evidence favorable to the non-movant as true. *Id.* at 548-49. We indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Id.* at 549. When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002); *see also City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

***State Regulation and Taxation of Insurance Activities***

We begin with the premise that a state may exercise its police power to regulate and tax the business of insurance, including those insurance activities and transactions occurring within its borders. McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011-12 (West 1997).[7] Before and after the passage of the McCarran-Ferguson Act, the Supreme Court confirmed that a state may regulate and tax insurance activities occurring within its borders. *See, e.g.*, *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 319 (1946); *Osborn v. Ozlin*, 310 U.S. 53, 65-66 (1940); *Whitfield v. Aetna Life Ins. Co.*, 205 U.S. 489, 495 (1907); *see also Risk Managers Int'l, Inc. v. State*, 858 S.W.2d 567, 571

---

[7] Congress enacted the McCarran-Ferguson Act in 1945 in response to the Supreme Court's holding in *United States v. South-Eastern Underwriters Association*, 322 U.S. 533 (1944). In *South-Eastern Underwriters*, the Supreme Court held for the first time that insurance contracts were deemed to be articles of commerce and, therefore, fell within the scope of Congress's regulatory authority under the Commerce Clause. *Id.* at 553. Congress promptly passed the McCarran-Ferguson Act to preserve the state's authority to regulate and tax insurance transactions. *See* 15 U.S.C.A. §§ 1011-15 (West 1997).

(Tex. App.—Austin 1993, writ denied) (recognizing "United States Supreme Court has never held that a state may not regulate [insurance] transactions that occur within its borders").

The Texas Insurance Code provides that no one shall engage in the business of insurance without authorization by statute. Tex. Ins. Code Ann. § 101.102(a) (West Supp. 2006). Section 101.051 of the insurance code defines those activities that constitute the business of insurance. *Id.* § 101.051 (West Supp. 2006). These activities are set forth in sections 101.051(b) and (c), and they include:

(1)     making or proposing to make, as an insurer, an insurance contract;

(2)     making or proposing to make, as guarantor or surety, a guaranty or suretyship contract as a vocation and not merely incidental to another legitimate business or activity of the guarantor or surety;

(3)     taking or receiving an insurance application;

(4)     receiving or collecting any consideration for insurance, including:

(A) a premium;

(B) a commission;

(C) a membership fee;

(D) an assessment; or

(E) dues;

(5)     issuing or delivering an insurance contract to:

(A) a resident of this state; or

(B) a person authorized to do business in this state;

(6)     directly or indirectly acting as an agent for or otherwise representing or assisting an insurer or person in:

6

(A) soliciting, negotiating, procuring, or effectuating insurance or renewal of insurance;

(B) disseminating information relating to coverage or rates;

(C) forwarding an insurance application;

(D) delivering an insurance policy or contract;

(E) inspecting a risk;

(F) setting a rate;

(G) investigating or adjusting a claim or loss;

(H) transacting a matter after the effectuation of the contract that arises out of the contract; or

(I) representing or assisting an insurer or person in any other manner in the transaction of insurance with respect to a subject of insurance that is resident, located, or to be performed in this state;

(7) contracting to provide in this state indemnification or expense reimbursement for a medical expense by direct payment, reimbursement, or otherwise to a person domiciled in this state or for a risk located in this state, whether as an insurer, agent, administrator, trust, or funding mechanism or by another method;

(8) doing any kind of insurance business specifically recognized as constituting insurance business within the meaning of statutes relating to insurance;

(9) doing or proposing to do any insurance business that is in substance equivalent to conduct described by Subdivisions (1)-(8) in a manner designed to evade statutes relating to insurance; or

(10) any other transaction of business in this state by an insurer.

*Id.* § 101.051(b) (West Supp. 2006). In addition, section 101.051(c) provides:

An act described by Subsection (b) by an unlicensed or unauthorized person or insurer that occurs in this state and that affects a person in another state or jurisdiction constitutes the business of insurance in this state.

7

*Id.* § 101.051(c).

By engaging in any of the activities listed in sections 101.051(b) and (c), an insurance company subjects itself to regulation and taxation in Texas unless it meets the statutory requirements for an exemption. Section 101.053(b) sets forth eight transactions that do not constitute the business of insurance in Texas and are, therefore, exempt from State regulation. Section 101.053(b)(4) establishes the independently procured insurance exemption. To qualify for this exemption, four requirements must be met: (1) the insurance policy must be independently procured; (2) the negotiations must occur entirely outside the State of Texas; (3) the insurance transaction must be reported to the Texas Department of Insurance; and (4) the premium tax must be paid as required by chapter 226 of the insurance code. *Id.* § 101.053(b)(4). An insurance transaction that meets these requirements is not subject to regulation by the Texas Department of Insurance. *Risk Managers*, 858 S.W.2d at 570.

In addition to the various regulatory requirements imposed under state law, Texas also imposes a variety of taxes on insurance premiums. *See generally* Tex. Ins. Code Ann. §§ 221-26 (West Supp. 2006). In most cases, the taxes are imposed on and paid by insurers licensed to do business in Texas. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 84 (Tex. 2006). But premium taxes are also assessed even if there is no licensed insurer to prevent unlicensed insurers from gaining an unfair advantage when issuing insurance policies in Texas. *Id.* The insurance code imposes a 4.85% premium tax on insurance policies issued by unauthorized insurers. Tex. Ins. Code Ann. §§ 226.002-.003. If the insurer does not pay this tax, then the insured must do so. *Id.* § 226.005.

8

Texas also imposes a similar tax on independently procured insurance. *Id.* § 226.052. Like the tax imposed on policies issued by unauthorized insurers, the premium tax imposed on independently procured insurance is 4.85%. *Id.* § 226.053. The insured, and not the insurer, is liable for the independently procured insurance tax. *Id.* § 226.054. This is consistent with the notion that independently procured insurance is actually an exception to the State's laws regulating the business of insurance. *Risk Managers*, 858 S.W.2d at 571.

### Challenges to Independently Procured Insurance Tax

Relying on the Supreme Court's holding in *Todd Shipyards* and this Court's holding in *Dow Chemical*, STP argues that the independently procured insurance tax violates Due Process and the McCarran-Ferguson Act. STP also urges us to affirm the trial court's grant of summary judgment because the independently procured insurance tax violates the Equal Protection Clauses of the United States and Texas Constitutions, *see* U.S. Const. amend. XIV, §§ 1-2, and Tex. Const. art. I, § 3, and the Equal and Uniform Clause of the Texas Constitution, *see* Tex. Const. art. VIII, § 1. STP further contends that the Comptroller's system of taxation is arbitrary and capricious and has no basis in law.

In determining whether a statute is constitutional, we presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it. Tex. Gov't Code Ann. § 311.021 (West 2005); *Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex. 1985). The party challenging the statute has the burden to demonstrate that it is unconstitutional. *Texas Pub. Bldg. Auth.*, 686 S.W.2d at 927. A reviewing court must uphold the statute if it can be construed in a manner consistent with legislative intent and is not repugnant to the Constitution. *Texas Mun.*

9

*League v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002); *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex. 1989).

1.      *Due Process and McCarran-Ferguson Act*

This Court has considered the independently procured insurance exemption and tax on at least three separate occasions. *See Dow Chemical*, 38 S.W.3d at 741; *Risk Managers*, 858 S.W.2d at 567; *State Bd. of Ins. v. Todd Shipyards Corp.*, 340 S.W.2d 339 (Tex. App.—Austin 1960, writ ref'd n.r.e.), *aff'd*, 370 U.S. 451 (1962). We address each of these cases.

In *Todd Shipyards*, we concluded that an out-of-state corporation licensed to do business in Texas was not liable for the independently procured insurance tax because the only connection between Texas and the insurance transaction at issue was the physical location in Texas of the property covered by the insurance policy. 340 S.W.2d at 339. Our conclusion was based on the facts as stipulated by the parties: (1) the insurers in *Todd Shipyards* had no offices in Texas; (2) there were no agents in Texas; (3) the insurers did not solicit business in Texas; and (4) did not investigate risks or claims in Texas. *Id.* at 340-42. Moreover, the insured was not domiciled in Texas; the premiums were paid by the principal's New York office; and the losses under the policy were also paid in New York. *Id.* In other words, the insurance transaction took place entirely outside the State.

After the Texas Supreme Court denied the application for writ of error, the United States Supreme Court affirmed our holding in *Todd Shipyards*, 370 U.S. at 451. In doing so, the Court reaffirmed a trilogy of cases, *Allgeyer v. Louisiana*, 165 U.S. 578 (1897), *St. Louis Cotton Compress Co. v. Arkansas*, 260 U.S. 346 (1922), and *Connecticut General Life Insurance Co. v.*

10

*Johnson*, 303 U.S. 77 (1938), decided prior to the passage of the McCarran-Ferguson Act. The Court acknowledged a congressional committee report which indicated that the purpose of the McCarran-Ferguson Act was to provide for the continued regulation and taxation of insurance transactions by the states, subject to the limitations set out in *Allgeyer*, *St. Louis Cotton Compress*, and *Connecticut General Life Insurance. See Todd Shipyards*, 370 U.S. at 456.

In *Allgeyer*, the Court invalidated on Due Process grounds a Louisiana statute that made it a misdemeanor to contract for insurance on Louisiana risks with an insurance company not licensed to do business in Louisiana, where the insured contracted for the policy through the use of the mails. 165 U.S. at 578. In *St. Louis Cotton Compress*, the Court held invalid a tax on premiums paid for a policy on Arkansas risks from an out-of-state insurer with no office or agents in Arkansas. 260 U.S. at 346. In *Connecticut General Life Insurance*, the Court found a California tax on premiums paid in Connecticut for reinsurance on life insurance policies issued in California invalid on Due Process grounds. 303 U.S. at 77. In all three of these cases, the Court examined the facts underlying the insurance transaction at issue and concluded that each transaction occurred entirely outside the taxing state and was, therefore, not subject to state regulation or taxation. In deference to Congress's statement that state authority to regulate and tax the business of insurance under the McCarran-Ferguson Act was coextensive with the Court's decisions in these three cases, the Court examined the facts underlying the insurance transaction at issue in *Todd Shipyards* and concluded that the transaction occurred "entirely outside Texas." 370 U.S. at 454, 456, 458. Given these facts, the Supreme Court affirmed this Court's holding that the tax on the transaction at issue violated

11

Due Process and the McCarran-Ferguson Act. *Id.* at. 458.[8]

---

[8] There is no indication in either the opinion by this Court or the opinion by the Supreme Court that the independently procured insurance tax statute was invalidated on its face. *Todd Shipyards Corp. v. State Bd. of Ins.*, 340 S.W.2d 339 (Tex. App.—Austin 1960, writ ref'd n.r.e.), *aff'd*, 370 U.S. 451 (1962). Rather, both opinions refer extensively to the facts as stipulated by the parties in that case to conclude that the transaction at issue occurred "entirely outside Texas." *See* 340 S.W.2d at 340-42; 370 U.S. at 454-55.

There are two types of constitutional challenges—facial and as-applied. Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 236 (1994). Facial challenges to the constitutionality of a statute are disfavored and generally permitted only in the context of the First Amendment. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998); *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798-99 (1984) (recognizing "overbreadth doctrine"); *see also Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (1995) (observing that "overbreadth doctrine" is narrow exception to general rule of standing that has been reserved for First Amendment cases). A party seeking to invalidate a statute "on its face" bears a heavy burden of showing that the statute is unconstitutional in all of its applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Garcia*, 893 S.W.2d at 518 & n.16 (1995). In contrast, a party making an as-applied challenge need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case. *Garcia*, 893 S.W.2d at 518 n.16. More importantly, as-applied challenges are fact specific and must be brought on a case-by-case basis. The difference between these two types of challenges is critical. When a court invalidates a statute on its face, the statute may not be enforced under any circumstances, but when a court finds a statute unconstitutional as applied to a particular set of facts, the statute may be constitutionally enforced under different facts. Dorf, *supra*, at 236.

Todd Shipyards' claim "does not fit within the case law allowing courts to entertain facial challenges" because neither in this Court, nor in the Supreme Court, did Todd Shipyards seek to rely on the effect of the tax on other parties not before the court. *See Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40-41 (1999). Nor did Todd Shipyards raise a First Amendment challenge to the tax. *See* 340 S.W.2d at 339; 370 U.S. at 453. Based on "the general rule that constitutional adjudication requires a review of the application of a statute to the conduct of the party before the court," *see Taxpayers for Vincent*, 466 U.S. at 798, coupled with the absence of any statement by either this Court or the Supreme Court that Todd Shipyards had raised a facial challenge to the independently procured insurance tax, we conclude that Todd Shipyards presented only an as-applied challenge. This is consistent with subsequent decisions by this Court, as well as other state supreme courts that have considered the issue. *Risk Managers Int'l, Inc. v. State of Texas*, 858 S.W.2d 567 (Tex. App.—Austin 1993, writ denied) (upholding application of the independently procured insurance tax under facts different from *Todd Shipyards*); *see also People v. United Nat'l Life Ins. Co.*, 427 P.2d 199 (Cal. 1967) (same); *Mobil Oil Corp. v. Durkin*, 278 A.2d 477

Over thirty years later, this Court again had occasion to consider the constitutionality of the independently procured insurance statute in *Risk Managers* and *Dow Chemical*. Discerning no difference between the facts in *Todd Shipyards* and the facts in *Dow Chemical*, this Court held that the independently procured insurance tax violated the McCarran-Ferguson Act. *Dow Chemical*, 38 S.W.3d at 747. As our opinion explained, "The factual similarities between Todd Shipyards and Dow are readily apparent." *Id.* at 746. In both instances, the only connection with Texas was that the insurance policy covered property located in Texas. *Id.* All of the insurers were domiciled outside of Texas, and none were licensed in Texas. *Id.* The insurance agreements were "contracted for, signed, issued, delivered, paid for, and accepted out of this state." *Id.* None of the insurers had offices in Texas; none of the insurers investigated or adjusted claims in Texas; and none of the insurers solicited business in Texas. *Id.* Nor did any of the insurers communicate with either Todd Shipyards or Dow Chemical in the State of Texas, and all of the decisions relating to the negotiation and formation of the insurance policies at issue occurred out of state. *Id.*

In *Risk Managers*, however, we concluded that the facts in *Todd Shipyards* were different from those presented in *Risk Managers*. 858 S.W.2d at 570. In *Todd Shipyards*, the insured was an out-of-state corporation that owned property in Texas, whereas in *Risk Managers*, the insured was a Texas corporation with offices in Dallas. Additionally, the insurance contracts were negotiated in Texas, and premium payments were received in Texas. On these facts, we concluded that *Todd Shipyards* did not preclude the State of Texas from regulating insurance

---

(N.H. 1971) (same); *Howell v. Rosecliff Realty Co.*, 245 A.2d 318 (N.J. 1968) (same); *Associated Elec. & Gas Ins. Servs., Ltd. v. Clark*, 676 A.2d 1357 (R.I. 1996) (distinguishing *Todd Shipyards* on its facts); *State of South Dakota v. American Bankers Ins. Co.*, 374 N.W.2d 609 (S.D. 1985) (same).

transactions in which the insured is physically located in Texas during the negotiations leading to the formation of insurance contracts. *Id.* at 571.

Reviewing the record and the summary judgment evidence presented by the parties in this case, we conclude that the independently procured insurance tax as applied to STP does not violate either Due Process or the McCarran-Ferguson Act. STP is a Texas corporation headquartered in Matagorda County. For each of the calendar years at issue, STP's supervisor of corporate insurance, who offices in Matagorda County, testified that he "personally supervised the procurement of the policies of insurance procured from NEIL."[9] There is also evidence in the record of direct communications via e-mail and letters between NEIL and STP regarding the insurance contracts at issue.[10] The insurance contracts at issue were negotiated and approved by STP's employees in Texas. Premium payments, although transferred to NEIL via STP's Delaware representative, originated in Texas. And losses are payable to the owners of the South Texas Nuclear Project in

---

[9] The summary judgment record includes two affidavits: one from Ronald Hyde, the supervisor of corporate insurance for 2003 and 2004, and one from Gerald Wilson, STP's supervisor of corporate insurance for 2002. Both Hyde and Wilson stated that they personally supervised the procurement of insurance from NEIL.

[10] Although some of these communications were passed through STP's agent in Delaware, this does not alter our analysis. Tex. Ins. Code Ann. § 101.051(b)(6)(A) (West Supp. 2006) (providing that the business of insurance includes, among other activities, "directly or indirectly acting as an agent for or otherwise representing or assisting an insurer or person in . . . soliciting, negotiating, procuring, or effectuating insurance or a renewal of insurance"); *see also Illinois Commercial Men's Ass'n v. State Bd. of Equalization*, 671 P.2d 349, 354-55 (Cal. 1983) (holding insurer's use of agent is irrelevant to whether nexus required for taxation is present); *Howell v. Rosecliff Realty Co.*, 245 A.2d 318, 325 (N.J. 1968) (finding it irrelevant to the subject of taxation that an insurer performs obligations under insurance contract through direct employees or independent contractors). There is sufficient evidence in the record of direct communications between STP employees and NEIL employees.

14

Texas. We conclude that the independently procured insurance tax as applied to the transaction at issue here does not violate either Due Process or the McCarran-Ferguson Act.[11]

### 2. Equal Protection/Equal and Uniform Taxation

STP argues that the independently procured insurance tax violates the Equal Protection Clauses of the United States and Texas Constitutions, as well as the Equal and Uniform Clause of the Texas Constitution. U.S. Const. amend. XIV, § 2; Tex. Const. arts. I, § 3; VIII, § 1.[12] Specifically, STP contends that the Comptroller discriminates against foreign corporations in her assessment and collection of the tax. We evaluate equal protection challenges under the Texas Constitution using the same standard for equal protection challenges brought under the federal Constitution. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 631 (Tex. 1996) (applying federal standards to evaluate equal protection claim under Texas Constitution); *see also Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex. 1990) (same). Additionally, the requirements for equal protection under the United States Constitution and equal and uniform taxation under the Texas Constitution are substantially the same. *Upjohn Co. v.*

---

[11] Given our holding that the independently procured insurance tax as applied to the facts in this case does not violate Due Process or the McCarran-Ferguson Act, we do not reach the Comptroller's alternative argument that STP is liable for the unauthorized insurance tax.

[12] The United States Constitution precludes the State from making or enforcing any law that "deprive[s] any person of life, liberty, or property without due process of law; nor deny to any person . . . equal protection of the laws." U.S. Const. amend. XIV, § 2. Article I, section 3 of the Texas Constitution states, "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." Tex. Const. art. I, § 3. The Texas Supreme Court generally refers to this provision as an "equal protection guarantee." *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 631 (Tex. 1996).

15

*Rylander*, 38 S.W.3d 600, 609 (Tex. App.—Austin 2000, pet. denied); *Railroad Comm'n v. Channel Indus. Gas Co.*, 775 S.W.2d 503, 507 (Tex. App.—Austin 1989, writ denied).

The crux of STP's claim is not that the Comptroller has discriminated against similarly situated corporations, but rather that the Comptroller has selectively enforced the independently procured insurance tax only against domestic corporations and "has essentially ceased enforcement actions . . . against foreign corporations."[13] To establish a claim of selective or discriminatory enforcement, STP must show that it has been singled out for prosecution while others similarly situated and committing the same acts have not. *State v. Malone Serv. Co.*, 829 S.W.2d 763, 766 (Tex. 1992); *Allen-Burch, Inc. v. Texas Alcoholic Beverage Comm'n*, 104 S.W.3d 345, 353 (Tex. App.—Dallas 2003, no pet.). It is not sufficient to show that the law has been enforced against some and not against others. *See Malone Serv. Co.*, 829 S.W.2d at 766. STP must show that the Comptroller has purposely discriminated in its enforcement of the law on the basis of impermissible classifications such as race, religion, or the desire to prevent the exercise of constitutional rights. *See id.*

We conclude that STP has failed to meet its required burden to establish a claim of selective enforcement. STP is a Texas corporation, and STP has presented no evidence showing that

---

[13] Claims of selective or discriminatory enforcement fall within the scope of the constitutional guarantee of equal protection under the law. U.S. Const. amend. XIV, § 2; Tex. Const. art. I, § 3; *see generally Yick Wo v. Hopkins*, 118 U.S. 356 (1886); *State v. Malone Serv. Co.*, 829 S.W.2d 763, 766 (Tex. 1992). Although such claims originated in the context of criminal prosecutions, the same governing principles also apply to civil proceedings involving state agencies. *See Railroad Comm'n v. Shell Oil Co.*, 161 S.W.2d 1022, 1025-28 (Tex. 1942); *Colorado River W. Ry. v. Texas & New Orleans R.R. Co.*, 283 S.W.2d 768, 776-77 (Tex. Civ. App.—Austin 1955, writ ref'd n.r.e.).

16

the Comptroller has selectively enforced the independently procured insurance tax only against other Texas corporations. Indeed, the summary judgment evidence reveals that several foreign corporations continued to pay the independently procured insurance tax throughout the tax years in issue. To the extent STP claims that the Comptroller has ceased enforcement efforts against foreign corporations, STP cannot establish a claim of discriminatory enforcement because, as a domestic corporation, STP is not similarly situated to foreign corporations. STP's assertions that the Comptroller has enforced the independently procured insurance tax against some and not others do not establish a selective or discriminatory enforcement claim. *See id.* Accordingly, STP has failed to establish an equal protection violation of the United States or Texas Constitutions, much less a violation of the equal and uniform provision of the Texas Constitution.

3. *Arbitrary and Capricious*

In its final argument, STP argues that the statutory scheme imposing the independently procured insurance tax is arbitrary and capricious and unconstitutionally vague because it does not "give[ ] an insured fair notice of its applicability at the time the transaction occurs" and the Comptroller has not provided a consistent explanation of when the tax will apply. We disagree.

As with STP's other constitutional challenges, we presume that the independently procured insurance tax statute is constitutional. Tex. Gov't Code Ann. § 311.021; *Texas Pub. Bldg. Auth.*, 686 S.W.2d at 927. STP has the burden to demonstrate otherwise. *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974). A law is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law must give a person of ordinary

17

intelligence a reasonable opportunity to know what is prohibited. *Id.* A law also must provide explicit standards to those who enforce and apply them. *Id.*

The insurance code expressly provides that independently procured insurance involves a transaction whereby the insured independently procures an insurance contract "from an insurance company not authorized to do insurance business in this state through negotiations occurring entirely outside this state." Tex. Ins. Code Ann. § 101.053(b)(4). We have previously construed independently procured insurance as an exemption from the state's unauthorized insurance laws. *Risk Managers*, 858 S.W.2d at 570. To come within this exemption, the statute requires that "negotiations occur[ ] *entirely outside this state*." Tex. Ins. Code Ann. § 101.053(b)(4)(A) (emphasis added). In addition, the transaction must be reported and the tax must be paid in accordance with chapter 226 of the insurance code. *Id.* § 101.053(b)(4)(B)-(C).

STP does not dispute these statutory requirements, nor does STP argue that these statutory requirements are arbitrary and capricious or unconstitutionally vague. Rather, STP argues that the Comptroller has promulgated different reporting forms for the independently procured insurance tax and has used different instructions on these forms for each of the tax years at issue.[14]

---

[14] We reject STP's claim that the statutory scheme is vague because STP did not know whether its conduct in procuring insurance from NEIL required it to pay independently procured insurance tax. "A statute is not unconstitutionally vague merely because a company . . . can raise uncertainty about its application to the facts of their case." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 509 (5th Cir. 2001). As the Supreme Court held in *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982), "businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to the administrative process." All of the Comptroller's forms plainly state that if STP had questions, it could contact the Comptroller directly for assistance. By making an inquiry in this case, STP could have obtained a pre-audit ruling on whether it was required to pay the independently procured insurance tax.

18

Importantly, however, STP does not argue that the Comptroller's instructions differ from the statutory requirements in section 101.053 of the insurance code. After reviewing the Comptroller's instructions on the reporting forms for each of the tax years in issue, we conclude that the Comptroller's instructions mirror the statutory requirements in section 101.053 of the insurance code. Because STP does not argue that the *statutory requirements* are unconstitutionally vague and the Comptroller's instructions mirror the statutory requirements, STP fails to establish that the *statutory scheme* is arbitrary or capricious or unconstitutionally vague.

## CONCLUSION

Having reviewed the record and the summary judgment evidence presented, we conclude that the trial court erred in granting summary judgment in favor of STP. We further conclude that there are no disputed issues of material fact and, therefore, the Comptroller has demonstrated that it is entitled to judgment as a matter of law. Accordingly, we reverse the trial court's judgment and render judgment in favor of the Comptroller.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Reversed and Rendered

Filed: May 1, 2007