TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING







NO. 03-05-00585-CR

NO. 03-05-00586-CR





Ex parte James W. Ellis






NO. 03-05-00589-CR

NO. 03-05-00590-CR

NO. 03-05-00591-CR

NO. 03-05-00592-CR

NO. 03-05-00593-CR

NO. 03-05-00594-CR

NO. 03-05-00595-CR

NO. 03-05-00596-CR

NO. 03-05-00597-CR

NO. 03-05-00598-CR

NO. 03-05-00599-CR

NO. 03-05-00600-CR

NO. 03-05-00601-CR

NO. 03-05-00602-CR

NO. 03-05-00603-CR






Ex parte John Dominick Colyandro






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT

NOS. D-1-DC-2005-904122, 9040564, 9040570, 9040571, 9040572, 9040573, 9040574,

9040575, 9040576, 9040577, 9040565, 9040566, 9040567, 9040568, 9040569,

9040598 & D1DC-05-904121, HONORABLE BOB PERKINS, JUDGE PRESIDING






S U P P L E M E N T A L O P I N I O N


 We write this supplemental opinion to address issues raised by the State's motion
for rehearing. We do not withdraw the original opinion.

 In its motion for rehearing, the State contends that this Court erred by considering
appellants' challenge to the money-laundering statute as a facial challenge to the constitutionality
of the statute, arguing that appellants instead raise an as-applied challenge that should not be
addressed in a pretrial habeas proceeding. The State's contention is inconsistent with the application
for writ of habeas corpus filed by appellants and our obligations under United States Supreme Court
precedent establishing the procedure for examining a facial challenge.

 The State contends that we erred by characterizing appellants' challenge as a
facial challenge to the constitutionality of the statute. We agree that we may consider only facial
challenges on pretrial habeas. See Ex parte Weise, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). The
State's argument is based in large part on the fact that appellants specify that the statute is vague if
the definition of funds includes checks. (1) Whether checks are within the definition of funds in the
applicable version of the statute is plainly raised by appellants. The question is whether appellants
have raised this issue as a purely as-applied challenge that would be inappropriate for review on
pretrial habeas, or whether they have raised a challenge to the facial constitutionality of the statute.

 Appellants' attack on the statute is not limited to whether the definition of "funds"
includes checks, although that is the application that concerns them directly. Appellants assert
that "the money laundering statute is unconstitutionally vague." (2) They cite the definition of "funds"
in the applicable version of the statute (3) and assert that each of the examples provided is a form of
cash. Appellants assert that "if money laundering could be committed by check the statute was
unconstitutionally vague," but they also argue more generally that the statute is vague because
"[d]ictionaries offer many and divergent definitions of 'fund,' many of which are inconsistent with
the types of 'funds' enumerated in the statute. It would be unconstitutional to charge [appellants]
with a crime whose elements can be determined only by picking and choosing among dictionary
definitions." They argue that the statute is "unconstitutionally vague because it denies fair notice
that it criminalizes conduct involving property not within the enumerated classes of 'funds.'" 
Appellants do not contend that the term "funds" is vague only as it is applied in these indictments. 
Their challenge is, in fact, a facial challenge.

 Even if an appellant raises some issues that are not cognizable on pretrial habeas,
we must address those issues that are raised and are necessary to the resolution of the appeal. See
Tex. R. App. P. 47.1; see also Ex parte Mattox, 683 S.W.2d 93, 96 (Tex. App.--Austin 1984,
pet. ref'd) (addressing facial challenge to the validity of the statute but declining to address allegation
that indictment was deficient). Regardless of whether certain of appellants' complaints could be
characterized as also raising an as-applied challenge to former penal code section 34.01, we must
address appellants' stated and argued facial challenge.

 The State contends that because appellants do not dispute that the statute applies to
cash transactions, we need not and must not address the appellants' facial challenge. The State's
contention is contrary to United States Supreme Court precedent. The Supreme Court has held that
if a statute is constitutional in one application, it is not facially invalid. Village of Hoffman Estates
v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 (1982). The Supreme Court set out the
process a court considering a facial challenge must follow:


 In a facial challenge to the overbreadth and vagueness of a law, a court's first task is
to determine whether the enactment reaches a substantial amount of constitutionally
protected conduct. If it does not, then the overbreadth challenge must fail. The court
should then examine the facial vagueness challenge and, assuming the enactment
implicates no constitutionally protected conduct, should uphold the challenge only
if the enactment is impermissibly vague in all of its applications. A plaintiff who
engages in some conduct that is clearly proscribed cannot complain of the vagueness
of the law as applied to the conduct of others. A court should therefore examine the
complainant's conduct before analyzing other hypothetical applications of the law.


Id. (emphasis added) (footnotes omitted). In a footnote, the Supreme Court explained further:


 "[Vagueness] challenges to statutes which do not involve First Amendment freedoms
must be examined in the light of the facts of the case at hand." United States
v. Mazurie, 419 U.S. 544, 550 (1975). See United States v. Powell, 423 U.S. 87,
92-93 (1975); United States v. National Dairy Products Corp., 372 U.S. 29, 32-33,
36 (1963). "One to whose conduct a statute clearly applies may not successfully
challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974).


Id. at 495 n.7; see also 181 South Inc. v. Fischer, 454 F.3d 228, 235 (3d Cir. 2006). The Supreme
Court later wrote that a facial challenge is difficult to win because "the challenger must establish
that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 
481 U.S. 739, 745 (1987) (quoted in Combs v. STP Nuclear Operating Co., 239 S.W.3d 264, 272
n.8 (Tex. App.--Austin 2007, pet. denied)).

 While the Supreme Court could have, either in Salerno or in a subsequent case,
overruled or amended Hoffman Estates and announced a process by which courts must begin
their analysis of a facial challenge by examining hypothetical applications in search of any
possible scenario under which a statute could be valid, it did not. The State attempts to distinguish
Hoffman Estates as a First Amendment overbreadth case. It is that, but the relevant language
quoted above concerned the process for assessing a vagueness challenge. Hoffman Estates, 455 U.S.
at 495. The Supreme Court does not authorize skipping the threshold analysis of examining
the complainant's conduct before analyzing other hypothetical applications of the law. Harmonizing
these pronouncements, we conclude that a party making a facial vagueness challenge must
demonstrate that there is no set of circumstances under which the statute would be valid, starting
with the complainant's conduct. Salerno, 481 U.S. at 745; Hoffman Estates, 455 U.S. at 494-95. 
Contrary to the State's contention, not only is our examination of whether the term "funds" included
checks permitted in the course of our evaluation of appellants' facial challenge to the statute, it is
required by controlling Supreme Court precedent.

 In its second ground for rehearing, the State contends that this Court failed to apply
the correct principles of statutory construction when looking beyond the plain language of the
money-laundering statute. The State contends that the statute gave a person of ordinary intelligence
fair warning that it criminalized the use of checks as a means of money laundering prior to 2005. 
The State quotes the following language as the standard:


 Only where the "plain language of a statute would lead to absurd results, or if the
language is not plain but rather ambiguous, then and only then, out of absolute
necessity, is it constitutionally permissible for a court to consider, in arriving at a
sensible interpretation, such extratextual factors as executive or administrative
interpretations of the statute or legislative history." [Boykin v. State, 818 S.W.2d
782,] 785-86 [(Tex. Crim. App. 1991)].



In our original opinion, citing to a 1995 opinion written by former Presiding Judge of the Court of
Criminal Appeals, John Onion, we stated and followed these precepts in our discussion of statutory
interpretation. (4) Although the State may disagree with the manner in which these principles of
statutory construction were applied, this Court applied them here.

 The State also objects to our reliance on legal treatises on commercial paper and
transactions, rather than definitions that it found in a "quick review of several dictionaries" on which
an ordinary person might rely, to come to the conclusion that a check is a cash equivalent and,
therefore, a form of "fund" under the statute. State v. Holcombe, 187 S.W.3d 496, 500 (Tex. Crim.
App. 2006) ("In determining the plain meaning of a word, we initially look to dictionary
definitions.") Our review of representative dictionaries as well as the references supplied by the
State does not persuade us to alter our view of the statute. Two dictionaries do not mention the word
"check" in their definitions of fund at all. See American Heritage Dictionary 533 (1973) (defining
fund in part as "ready cash"); Webster's New Twentieth Century Dictionary (2d ed.) (1959). A third
dictionary mentions checks in the following definition of funds: "money on deposit which is held
at a specified place and on which checks can be drawn," which, if anything, highlights the distinction
between checks and cash rather than equating them. Webster's Third New International Dictionary
921 (1986). The definitions of "fund" also include such things as "a sum of money, or stock
convertible into money held available for the demands of an individual, company or corporation
engaged in business" (New Twentieth Century), "an organization established to administer a fund,"
(American Heritage), "a supply of intangible resources (as of information, stories, wisdom, and
goodwill)" (New International), and others even less like cash. This multiplicity of meanings and
range of common usage shows that the term "funds" is, at best, ambiguous. (5) Consistent with
legislative and judicial directives, (6) we examined the legislative history of both the original enactment
and the amendment to help discern what the legislature intended to include within the term "funds."

 The issue of whether the money-laundering statute is facially unconstitutionally vague
because of ambiguity in the use of the term "funds" was raised by appellants and is before this Court. 
Our examination of whether "funds" included "checks" was required based on the facts of this case
by Supreme Court precedent as part of a facial challenge. See Hoffman Estates, 455 U.S. at 494-95. 
Our examination of legislative history is particularly appropriate given the ambiguity of the
definition of the word "funds." See Boykin, 818 S.W.2d at 785-86. The appellants' constitutional
challenge was based on an erroneous interpretation of the statute. The correct interpretation of the
statute resolves this case without the need to delve into constitutional analysis. The issue is not
whether checks are the same as cash--they are not--or whether checks can be used as a means of
exchange--they can. The issue is whether the Legislature criminalized the use of checks as a means
of money laundering in 1993. The plain language of the statute does not include checks and the
legislative history is very clear--the Legislature did not criminalize the use of checks as a means of
money laundering in 1993, but did amend the statute to criminalize it in 2005. We remain persuaded
that the Legislature chose not to include checks within the scope of the term "funds" when defining
money laundering in 1993--a conclusion confirmed by the Legislature itself both in its limiting of
the statute in 1993 and in its broadening of the statute in 2005. Accordingly, the money-laundering
statute, as enacted prior to 2005, was not vague as asserted by the appellants, and the trial court did
not err by denying the application for writ of habeas corpus.

 The State's motion for rehearing is denied.


 

 G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;

 Chief Justice Law Not Participating


Filed: March 17, 2009

Publish
1. In the original indictment, the State alleged that appellants committed money laundering
by use of a check. The indictment is so specific to checks that the State reproduced a check in the
indictment.
2. Appellants' discussions of this issue in their briefs reiterates language found in the clerk's
record, such as the section in Ellis's application for writ of habeas corpus entitled "The Texas Money
Laundering Statutes are Unconstitutionally Vague" and the discussion that ensued regarding the
meaning of the statutory term "funds."
3. The prosecutions are governed by the money laundering statutes in effect in 2002. See
Act of May 26, 1993, 73d Leg., R.S., ch. 761, § 2, 1993 Tex. Gen. Laws 2966, 2967 (amended 2005)
(current version at Tex. Penal Code Ann. § 34.02 (West Supp. 2007)).
4. In relevant part, we wrote above as follows:



 When words are not defined, they are ordinarily given their plain meaning unless
the statute shows that they were used in some other sense. [Ex parte Anderson,
902 S.W.2d 695, 699 (Tex. App.--Austin 1995, pet. ref'd)]. In the absence of
special definitions, statutory language can be measured by common understanding
and practices or construed in the sense generally understood. Id.
5. Ambiguous means "characterized by, suggestive of, or exhibiting ambiguity." Webster's
Third New International Dictionary 66 (1986). Ambiguity means "the condition of admitting of
two or more meanings, of being understood in more than one way, or referring to two or more things
at the same time." Id. Ordinary people looking at the State's motion and our dictionaries would
find many more than two meanings of the word "funds."
6. See Tex. Gov't Code Ann. § 311.023 (West 2005); Boykin v. State, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).