# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON MOTION FOR REHEARING

---

### NO. 03-05-00585-CR
### NO. 03-05-00586-CR

**Ex parte James W. Ellis**

---

### NO. 03-05-00589-CR
### NO. 03-05-00590-CR
### NO. 03-05-00591-CR
### NO. 03-05-00592-CR
### NO. 03-05-00593-CR
### NO. 03-05-00594-CR
### NO. 03-05-00595-CR
### NO. 03-05-00596-CR
### NO. 03-05-00597-CR
### NO. 03-05-00598-CR
### NO. 03-05-00599-CR
### NO. 03-05-00600-CR
### NO. 03-05-00601-CR
### NO. 03-05-00602-CR
### NO. 03-05-00603-CR

---

**Ex parte John Dominick Colyandro**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. D-1-DC-2005-904122, 9040564, 9040570, 9040571, 9040572, 9040573, 9040574,
9040575, 9040576, 9040577, 9040565, 9040566, 9040567, 9040568, 9040569,
9040598 & D1DC-05-904121, HONORABLE BOB PERKINS, JUDGE PRESIDING**

# SUPPLEMENTAL OPINION

We write this supplemental opinion to address issues raised by the State's motion for rehearing. We do not withdraw the original opinion.

In its motion for rehearing, the State contends that this Court erred by considering appellants' challenge to the money-laundering statute as a facial challenge to the constitutionality of the statute, arguing that appellants instead raise an as-applied challenge that should not be addressed in a pretrial habeas proceeding. The State's contention is inconsistent with the application for writ of habeas corpus filed by appellants and our obligations under United States Supreme Court precedent establishing the procedure for examining a facial challenge.

The State contends that we erred by characterizing appellants' challenge as a facial challenge to the constitutionality of the statute. We agree that we may consider only facial challenges on pretrial habeas. *See Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). The State's argument is based in large part on the fact that appellants specify that the statute is vague if the definition of funds includes checks.[1] Whether checks are within the definition of funds in the applicable version of the statute is plainly raised by appellants. The question is whether appellants have raised this issue as a purely as-applied challenge that would be inappropriate for review on pretrial habeas, or whether they have raised a challenge to the facial constitutionality of the statute.

Appellants' attack on the statute is not limited to whether the definition of "funds" includes checks, although that is the application that concerns them directly. Appellants assert

---

[1] In the original indictment, the State alleged that appellants committed money laundering by use of a check. The indictment is so specific to checks that the State reproduced a check in the indictment.

that "the money laundering statute is unconstitutionally vague."[2] They cite the definition of "funds" in the applicable version of the statute[3] and assert that each of the examples provided is a form of cash. Appellants assert that "if money laundering could be committed by check the statute was unconstitutionally vague," but they also argue more generally that the statute is vague because "[d]ictionaries offer many and divergent definitions of 'fund,' many of which are inconsistent with the types of 'funds' enumerated in the statute. It would be unconstitutional to charge [appellants] with a crime whose elements can be determined only by picking and choosing among dictionary definitions." They argue that the statute is "unconstitutionally vague because it denies fair notice that it criminalizes conduct involving property not within the enumerated classes of 'funds.'" Appellants do not contend that the term "funds" is vague only as it is applied in these indictments. Their challenge is, in fact, a facial challenge.

Even if an appellant raises some issues that are not cognizable on pretrial habeas, we must address those issues that are raised and are necessary to the resolution of the appeal. *See* Tex. R. App. P. 47.1; *see also Ex parte Mattox*, 683 S.W.2d 93, 96 (Tex. App.—Austin 1984, pet. ref'd) (addressing facial challenge to the validity of the statute but declining to address allegation that indictment was deficient). Regardless of whether certain of appellants' complaints could be

---

[2] Appellants' discussions of this issue in their briefs reiterates language found in the clerk's record, such as the section in Ellis's application for writ of habeas corpus entitled "The Texas Money Laundering Statutes are Unconstitutionally Vague" and the discussion that ensued regarding the meaning of the statutory term "funds."

[3] The prosecutions are governed by the money laundering statutes in effect in 2002. *See* Act of May 26, 1993, 73d Leg., R.S., ch. 761, § 2, 1993 Tex. Gen. Laws 2966, 2967 (amended 2005) (current version at Tex. Penal Code Ann. § 34.02 (West Supp. 2007)).

characterized as also raising an as-applied challenge to former penal code section 34.01, we must address appellants' stated and argued facial challenge.

The State contends that because appellants do not dispute that the statute applies to cash transactions, we need not and must not address the appellants' facial challenge. The State's contention is contrary to United States Supreme Court precedent. The Supreme Court has held that if a statute is constitutional in one application, it is not facially invalid. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982). The Supreme Court set out the process a court considering a facial challenge must follow:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.*

*Id*. (emphasis added) (footnotes omitted). In a footnote, the Supreme Court explained further:

> "[Vagueness] challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). *See United States v. Powell*, 423 U.S. 87, 92-93 (1975); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32-33, 36 (1963). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).

*Id.* at 495 n.7; *see also 181 South Inc. v. Fischer*, 454 F.3d 228, 235 (3d Cir. 2006). The Supreme Court later wrote that a facial challenge is difficult to win because "the challenger must establish

4

that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (quoted in *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 n.8 (Tex. App.—Austin 2007, pet. denied)).

While the Supreme Court could have, either in *Salerno* or in a subsequent case, overruled or amended *Hoffman Estates* and announced a process by which courts must begin their analysis of a facial challenge by examining hypothetical applications in search of any possible scenario under which a statute could be valid, it did not. The State attempts to distinguish *Hoffman Estates* as a First Amendment overbreadth case. It is that, but the relevant language quoted above concerned the process for assessing a vagueness challenge. *Hoffman Estates*, 455 U.S. at 495. The Supreme Court does not authorize skipping the threshold analysis of examining the complainant's conduct before analyzing other hypothetical applications of the law. Harmonizing these pronouncements, we conclude that a party making a facial vagueness challenge must demonstrate that there is no set of circumstances under which the statute would be valid, starting with the complainant's conduct. *Salerno*, 481 U.S. at 745; *Hoffman Estates*, 455 U.S. at 494-95. Contrary to the State's contention, not only is our examination of whether the term "funds" included checks permitted in the course of our evaluation of appellants' facial challenge to the statute, it is *required* by controlling Supreme Court precedent.

In its second ground for rehearing, the State contends that this Court failed to apply the correct principles of statutory construction when looking beyond the plain language of the money-laundering statute. The State contends that the statute gave a person of ordinary intelligence

5

fair warning that it criminalized the use of checks as a means of money laundering prior to 2005. The State quotes the following language as the standard:

> Only where the "plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then*, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra*textual factors as executive or administrative interpretations of the statute or legislative history." [*Boykin v. State*, 818 S.W.2d 782,] 785-86 [(Tex. Crim. App. 1991)].

In our original opinion, citing to a 1995 opinion written by former Presiding Judge of the Court of Criminal Appeals, John Onion, we stated and followed these precepts in our discussion of statutory interpretation.[4] Although the State may disagree with the manner in which these principles of statutory construction were applied, this Court applied them here.

The State also objects to our reliance on legal treatises on commercial paper and transactions, rather than definitions that it found in a "quick review of several dictionaries" on which an ordinary person might rely, to come to the conclusion that a check is a cash equivalent and, therefore, a form of "fund" under the statute. *State v. Holcombe*, 187 S.W.3d 496, 500 (Tex. Crim. App. 2006) ("In determining the plain meaning of a word, we initially look to dictionary definitions.") Our review of representative dictionaries as well as the references supplied by the

---

[4] In relevant part, we wrote above as follows:

> When words are not defined, they are ordinarily given their plain meaning unless the statute shows that they were used in some other sense. [*Ex parte Anderson*, 902 S.W.2d 695, 699 (Tex. App.—Austin 1995, pet. ref'd)]. In the absence of special definitions, statutory language can be measured by common understanding and practices or construed in the sense generally understood. *Id.*

State does not persuade us to alter our view of the statute. Two dictionaries do not mention the word "check" in their definitions of fund at all. *See* American Heritage Dictionary 533 (1973) (defining fund in part as "ready cash"); Webster's New Twentieth Century Dictionary (2d ed.) (1959). A third dictionary mentions checks in the following definition of funds: "money on deposit which is held at a specified place and on which checks can be drawn," which, if anything, highlights the *distinction* between checks and cash rather than equating them. Webster's Third New International Dictionary 921 (1986). The definitions of "fund" also include such things as "a sum of money, or stock convertible into money held available for the demands of an individual, company or corporation engaged in business" (New Twentieth Century), "an organization established to administer a fund," (American Heritage), "a supply of intangible resources (as of information, stories, wisdom, and goodwill)" (New International), and others even less like cash. This multiplicity of meanings and range of common usage shows that the term "funds" is, at best, ambiguous.[5] Consistent with legislative and judicial directives,[6] we examined the legislative history of both the original enactment and the amendment to help discern what the legislature intended to include within the term "funds."

The issue of whether the money-laundering statute is facially unconstitutionally vague because of ambiguity in the use of the term "funds" was raised by appellants and is before this Court. Our examination of whether "funds" included "checks" was required based on the facts of this case

---

[5] Ambiguous means "characterized by, suggestive of, or exhibiting ambiguity." Webster's Third New International Dictionary 66 (1986). Ambiguity means "the condition of admitting of two or more meanings, of being understood in more than one way, or referring to two or more things at the same time." *Id.* Ordinary people looking at the State's motion and our dictionaries would find many more than two meanings of the word "funds."

[6] *See* Tex. Gov't Code Ann. § 311.023 (West 2005); *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).

by Supreme Court precedent as part of a facial challenge. *See Hoffman Estates*, 455 U.S. at 494-95. Our examination of legislative history is particularly appropriate given the ambiguity of the definition of the word "funds." *See Boykin*, 818 S.W.2d at 785-86. The appellants' constitutional challenge was based on an erroneous interpretation of the statute. The correct interpretation of the statute resolves this case without the need to delve into constitutional analysis. The issue is not whether checks are the same as cash—they are not—or whether checks can be used as a means of exchange—they can. The issue is whether the Legislature criminalized the use of checks as a means of money laundering in 1993. The plain language of the statute does not include checks and the legislative history is very clear—the Legislature did not criminalize the use of checks as a means of money laundering in 1993, but did amend the statute to criminalize it in 2005. We remain persuaded that the Legislature chose not to include checks within the scope of the term "funds" when defining money laundering in 1993—a conclusion confirmed by the Legislature itself both in its limiting of the statute in 1993 and in its broadening of the statute in 2005. Accordingly, the money-laundering statute, as enacted prior to 2005, was not vague as asserted by the appellants, and the trial court did not err by denying the application for writ of habeas corpus.

The State's motion for rehearing is denied.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;
    Chief Justice Law Not Participating

Filed:  March 17, 2009

Publish

8